1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10

11    MICHAEL O. DEVAUGHN,              Case No. 5:15-cv-00577-TJH (GJS)

12              Petitioner
                                        **REPORT AND**
13          v.                          **RECOMMENDATION OF**
                                        **UNITED STATES MAGISTRATE**
14    JOHN McDONELL,                     **JUDGE**

15              Respondent.

16

17

18          This Report and Recommendation is submitted to United States District Judge

19    Terry J. Hatter, Jr., pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the

20    United States District Court for the Central District of California.

21

22                              **INTRODUCTION**

23          On March 25, 2015, Petitioner filed a habeas petition pursuant to 28 U.S.C. §

24    2254 alleging 15 grounds for relief [Dkt. 1, "Petition"], along with a Memorandum

25    of Law [Dkt. 2, "Pet. Mem."] and Exhibits [Dkt. 3, "Pet. Ex."].  Respondent filed an

26    Answer initially [Dkt. 8] and then a Return with a supporting Memorandum [Dkt.

27    18-19] and also lodged the relevant portions of the state record [Dkt. 20, "LD"].

28    Petitioner thereafter filed a Traverse [Dkt. 54].

The matter is submitted and ready for decision.[1]  For the reasons set forth below, the Court recommends that the District Judge deny the Petition.

## PRIOR STATE PROCEEDINGS

This case stems from Petitioner's convictions sustained in Riverside County Superior Court Case No. RIF132760 (the "State Case").  In brief, as described by the California Court of Appeal, the State Case stemmed from a series of real estate-related transactions in which Petitioner, his brother, and other confederates and co-defendants induced third parties (typically real estate lenders) to transmit funds to bank accounts controlled by Petitioner, the proceeds of which then were laundered through other companies owned by Petitioner and his confederates.  Following a jury trial, the jury found Petitioner guilty of 16 counts of identity theft, nine counts of money laundering, two counts of causing a false financial document to get filed, four counts of operating as an unlicensed escrow agent, three counts of recording a false document, six counts of grant theft, and two counts of elder abuse in early September 2010.  The jury also found enhancement allegations for specified counts to be true.  Petitioner was sentenced to state prison for 31 years and eight months. [LD 3, 28-volume Clerk's Transcript ("CT") 6817-43; LD 5, single volume Clerk's Transcript ("Supp. CT") 123-29, 139-43; LD 2, single volume Reporter's Transcript ("Supp. RT") 143-68.]

Petitioner appealed [CT 130-34],[2] as did his co-defendant/brother Anthony M. DeVaughn and co-defendant Stepfon Macey.  Petitioner raised eight claims and was

---

[1]     Although the case was under submission when the Traverse was filed, Petitioner thereafter repeatedly attempted to expand the claims alleged in the Petition as well as the record.  [See, e.g., Dkt. 48, 56-57, 60-61, 73, 82.]  His efforts were rebuffed, primarily because the new claims he sought to raise were unexhausted and/or lacked merit or were not cognizable, the record already included the items for which expansion was sought, and no good cause supported the discovery requested.  [See, e.g., RT 72, 84, 85, 95.]

[2]     Petitioner filed a wealth of pre-trial and pre-conviction habeas and mandamus/prohibition

2

permitted to join in a claim raised by Macey.  These were:  (1) reversal of one money laundering count was required because of a lack of evidence that the money at issue came from criminal activity or was negotiated with the intent to further criminal activity; (2) Petitioner should have been convicted of only one count of operating an illegal escrow business for the transactions involving Fidelity Escrow; (3) the California Penal Code § 12022.6(a)(2) enhancement allegation should not have been attached to Count 27; (4) the jury never found the Section 12022.6(a)(2) allegation true as to Count 10; (5) multiple California Penal Code § 654 challenges to the sentence imposed; (6) reversal of Counts 18, 19, 20, and 33 was required because there was insufficient evidence that the transactions involved a "monetary instrument"; (7) as to these same four counts, the jury was not instructed adequately as to the definition of a "monetary instrument"; (8) reversal of Counts 44 and 45 was required because the jury was presented with alternative theories of culpability, one of which was legally defective; and (9) reversal of Count 21 was required because the checks involved were not "monetary instruments."  [LD 26-29, 31-33.] Although he was represented by appellate counsel, Petitioner sought leave to file a supplemental brief raising many of the same claims as are alleged in the instant Petition.  The California Court of Appeal denied leave to do so due to Petitioner's representation by counsel.  [*See* LD 34-35; Pet Ex., *passim*.][3]

On June 18, 2014, the California Court of Appeal issued a written decision in

---

petitions in the California Court of Appeal and the California Supreme Court, which were denied. [*See* LD 6-25.]  He also filed numerous federal actions in this District prior to his 2010 State Case conviction, followed by appeals to the United States Court of Appeal for the Ninth Circuit.  The Court will not discuss these state and federal pre-conviction actions (and related appeals) except as necessary in connection with its analysis of Petitioner's claims.

[3]      Docket Nos. 3 and 3-1 contain the Petition Exhibits.  Petitioner's proposed supplemental brief submitted to the California Court of Appeal is contained at Docket Nos. 3, ECF #38-39, and 3-1, ECF ## 1-39 (collectively, the "Supplemental Brief").  The Supplemental Brief contains Petitioner's arguments regarding Grounds Six through Fifteen of the Petition and, thus, will be cross-referenced herein extensively.

which it affirmed in part and reversed in part.  As to Petitioner, the state appellate court granted the following relief:  reversed his convictions on Counts 18, 19, 20, 21, and 33, following the State's concession that the checks involved were not "monetary instruments" for money laundering purposes (issues (6) and (9) above); struck the Section 12022.6(a)(2) enhancement as to Count 10, following the State's concession that the jury had not made a finding on the enhancement allegation (issue (4) above); agreed that the sentences imposed for Counts 12, 29, 38, and 46 should be stayed pursuant to California Penal Code § 654, but finding that sentences on numerous other Counts properly were not stayed (issue (5) above); and remanded with the direction that the trial court modify the abstract of judgment and recalculate the sentence accordingly, including by imposing the sentence for Count 2 as eight months consecutive and for Count 23 as two years concurrent.  [LD 36.]  Petitioner sought rehearing, which was denied.  [LD 37-38.]

Petitioner sought review in the California Supreme Court and raised three claims:  (1) the California Court of Appeal relied on a material misstatement of fact in affirming the money laundering convictions; (2) Petitioner's convictions for unlawfully engaging in business as an unlicensed escrow agent should be reversed, because the relevant statute regulates only the licensing of an escrow business and not the individual acts of the agent; and (3) the trial court erred in failing to stay the sentences for several convictions under Section 654.  [LD 39.]  On October 15, 2014, the California Supreme Court denied review without comment.  [LD 41.]

While his direct appeal was pending in the California Court of Appeal, Petitioner filed a *pro se* habeas petition in the California Supreme Court (Case No. S218670).  That petition expressly raised Grounds One and Three of the instant Petition (as Grounds 2 and 3) and a claim challenging the California Court of Appeal's order denying Petitioner leave to file the Supplemental Brief on direct appeal and the state appellate court's failure to consider the merits of the claims alleged therein (as Ground 1).  [LD 40, the "CSC Habeas Petition."]  On July 9,

4

2014, the California Supreme Court denied the CSC Habeas Petition without comment or citation to authority.  [LD 42.]

On October 30, 2014, the trial court amended the abstract of judgment and resentenced Petitioner to a total term of 28 years.  [Dkt. 77, Supplemental Lodgment No. 47, Attachments ## 1-2.]  Petitioner appealed that decision and obtained an order directing that his sentence be corrected to reflect a total of 27 years and four months.  [*See* April 27, 2020 California Court of Appeal Order in Case No. E071591.]

After the Petition was filed and this case commenced, Petitioner filed various habeas petitions in the state courts, copies of which are contained within Docket No. 47.  None of these proceedings, however, pertain to the 15 claims alleged in the Petition, and thus, they will not be addressed herein.

## SUMMARY OF THE EVIDENCE AT TRIAL

The record in this case is large; the Reporter's Transcript contains 25 volumes (double-sided printing), and the Clerk's Transcript over 30 volumes (also double-sided printing).  The Court has reviewed the record in this case, as well as the California Court of Appeal's summary of the evidence set forth in its direct appeal opinion, which is consistent with the Court's independent review of the record.  Accordingly, the Court has quoted the California Court of Appeal's opinion below to provide an initial factual overview.  The relevant portions of the trial record will be discussed further and in appropriate detail in connection with the Court's analysis of Petitioner's claims.[4]

FACTS
It would try the patience of any reader to recount
all the evidence supporting all the charges of which

---

[4]     On federal habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007).

defendants were convicted. Therefore, enough of the evidence to give the reader a flavor of what occurred follows.

In August 2005, [Petitioner], representing himself to be "Larry Perry" of Fidelity Escrow, leased an office in Riverside. In March 2006, with the rent on the office overdue, Macey, who represented himself as an associate of "Larry Perry's" appeared at the office and brought the rent up to date with cash, after "Larry Perry" said by phone that this was alright.

In the fall of 2005, a woman claiming to be Barbara Karr of Banning, California, contacted a real estate broker in Inglewood, California, and asked him to represent her in making an offer on a home in Ontario, California, that had been listed for sale. Thereafter, the broker received documents from Fidelity Escrow at the Riverside address identifying it as the escrow holder for the purchase by Barbara Karr, with "Larry Perry" as the escrow officer. After encountering questionable circumstances in connection with the loan,[5] the broker tracked down the real Barbara Karr, who told him that she was not in the process of purchasing the Ontario property. However, this did not occur until after escrow was opened with "Larry Perry" at Fidelity, and the owners of the Ontario property had signed a grant deed to Barbara Karr, which their agent sent to Fidelity at its Riverside office in December 2005. The Ontario property sellers filed a quiet title action to protect their right to the property on December 13, 2005. In November 2005, a "Tony Sanchez," at what he said was "Inland Mortgage," at the same address in Riverside as Fidelity, had contacted a mortgage broker about "Barbara Karr" borrowing the money for the purchase of the Ontario property. Documents submitted by "Barbara Karr" in order to obtain the loan had shown her address to be the Alhambra Lane, Perris property[6] and had contained other false information. Although the mortgage broker had found a lender for this transaction, the $275,000 loan had not closed because the mortgage

---

5    Footnote 4 in original: "This included discovering a letter suggesting that Barbara Karr, at an Alhambra Lane, Perris property (see below) had attempted to get a loan from a company and had run into problems with credit."

6    Footnote 5 in original: "See footnote 4, ante."

broker had been informed of the quiet title action.
[Petitioner] later admitted to the case agent that Jackie
Marshall, a former business associate of [Petitioner's],
had posed as Barbara Karr. When Jackie Marshall had
signed the loan documents for the Ontario property, she
had identified herself with a California driver's license
that contained the California driver's license number of
another person. This person did not know [Petitioner],
"Larry Perry," Jackie Marshall or Barbara Karr and did
not authorize any of them to use his driver's license
number.

The same "Tony Sanchez" who had approached
the mortgage broker for the loan on the Ontario property
also asked for two loans on property owned by C.L. and
Fannie Middleton in Los Angeles. The loan application
contained false information and [Petitioner] used his
mother and a former neighbor of Macey's, who lived at
the Alhambra Lane, Perris, property, to pose as the
Middletons on December 1, 2005, to sign the loan
documents for both loans. Fannie Middleton testified at
trial that she did not authorize anyone to take out loans
on her properties. Macey's former neighbor used a
driver's license bearing the California driver's license
number of a woman who did not know C.L. Middleton,
"Larry Perry," Fidelity, any of the defendants, Macey's
former neighbor, [Petitioner's] mother or Fannie
Middleton, and had not authorized any of them to use her
driver's license number. The mortgage broker decided
not to fund a loan on the Middleton's 43d Street, Los
Angeles, rental, but did fund a $161,000 loan on their
46th Street, Los Angeles, home. According to the
escrow instruction, the loan proceeds were to be wired to
an account at Washington Mutual Bank, ending in 701,
which belonged to "Larry Perry" doing business as
Fidelity Escrow. This wire transfer was the first activity
in this account, which had been opened on November 3,
2005. Subsequently, on December 14th, 15th and 19th,
checks were written on this account to Deal's Market in
South Carolina for $30,000, a market owned and
operated by [Petitioner] and Anthony [DeVaughn], to A
Squared Management for $10,000, which Anthony
[DeVaughn]later admitted he owned and was a "shell
company," to Hi–Tek–N–Effect for $10,000, to Macey
and to Fannie Holloway, the niece of Fannie Middleton.
There was no activity in this account after February 6,
2006. The broker that had funded this loan eventually
was reimbursed by the title insurance company.

7

[Petitioner] admitted to the case agent that he had orchestrated the successful loan.  No funds from this loan, however, went to either of the Middletons.

In 2006, "Inland Mortgage" contacted Crawford Investments, a hard money lender, about a $210,000 loan by the Middletons on their 43d street rental property.  On February 8, 2006, [Petitioner's] mother and Macey's former neighbor, posing as the Middletons, signed the loan documents and the deed of trust.  The name and license number of a female real estate agent, purported to be representing "Inland" but who was, in fact, unconnected with the transaction, was placed on the brokers' agreement with "Inland" and her signature was forged on it.  The loan closed on March 16, 2006.  The title company eventually reimbursed Crawford for the loan.  Of the loan proceeds, $153,618.79 was wired to Fidelity per the instructions of "the Middletons to Fidelity."  The account into which the money was wired at Washington Mutual, ending in 296, had been opened by "Larry Perry doing business as Fidelity Escrow" on March 14, 2006, using the California driver's license number of an Orange County schoolteacher.  On March 16 and 17, 2006, two checks, each for $60,000, made out to Larry Perry from this account, were cashed.  Cashier's checks totaling almost $50,000 were also given to Macey's business.

The evidence concerning the transactions dealing with the Alhambra Lane, Perris property is conflicting and confusing and need not be recounted here, except to say that it was similar to what had occurred with the Ontario property and the Middletons' properties.

[Petitioner] unsuccessfully approached an acquaintance who lived in Alabama about going into business with him.  Eventually, [Petitioner's] business associate in Alabama put [Petitioner] in touch with his nephew's girlfriend, Felisha Poole.  Through his business associate in Alabama, [Petitioner] directed Felisha, in June 2006, to get a business license and set up three bank accounts at three different banks in the area for three different entities.  The name of one of the companies was identical to the name of a legitimate company in California that serviced loans.  Poole was told that she would get $500 every time she took money out of these accounts.  Proceeds from loans on the Alhambra Lane, Perris, property, totaling $85,342 and $334,538 were

deposited into one of these accounts.  A check was
written to Deal's Market on that account, as were checks
for $7,880 and $72,000 (made out to cash), in addition to
cash withdrawals totaling $42,000, all during June 2006.
Cashier's checks in five-figure amounts were made out in
June 2006, to [Petitioner] and to various entities
established and controlled by Anthony [Devaughn] and
Macey from the money withdrawn from this account.
Similar transactions took place in the other two accounts.

[LD 36 at 4-8.]

## PETITIONER'S HABEAS CLAIMS

*Ground One*:  The State of California lacked personal jurisdiction over
Petitioner, because the State used false and forged documents, which were based on
perjury, to mislead a magistrate and the U.S. Marshals Service in order to "kidnap"
Petitioner in Birmingham, Alabama and bring him to California to be tried in the
State Case.  In addition, Petitioner's rights under the Fourth Amendment were
violated when a prosecution investigator gathered "privacy protected" information
without a warrant and used that information, along with perjury, to obtain a search
warrant.

*Ground Two*:  Trial counsel provided ineffective assistance by:  failing to
challenge the State's personal jurisdiction over Petitioner under the above theory at
the initial appearance or thereafter, which forced Petitioner to represent himself; on
November 29, 2006, failing to see that the case was due for dismissal under
California Penal Code § 859(b) and, instead, advising Petitioner to waive time;
failing to ascertain that the money laundering counts were "void as a matter of law";
some unspecified conduct related to California Penal Code § 786(b)(2); failing to
protect Petitioner's rights under California Penal Case § 861; and failing to
challenge an unspecified "out-of-state search warrant" prior to or during the
preliminary hearing.

*Ground Three*:  Appellate counsel provided ineffective assistance by failing

to raise the claims set forth in the Supplemental Petition (the pro per brief that the California Court of Appeal declined to file on direct appeal and which Petitioner thereafter proffered to the California Supreme Court through the CSC Habeas Petition), which now are alleged as Grounds Four through Fifteen of the Petition.

*Ground Four*:  The failure of the trial court and the California Court of Appeal to grant Petitioner's various pre-trial writ petitions, as well as the State's invocation of the federal abstention doctrine in connection with Petitioner's federal pre-trial habeas petitions, violated federal due process by causing Petitioner to have to wait to raise his claims until after trial.

*Ground Five*:  Petitioner would have received de novo review of his federal pre-trial habeas claims had this Court and the Ninth Circuit declined to apply the abstention doctrine and instead ruled on the merits of his various federal pre-trial habeas petitions, and therefore, the federal courts are "judicially estopped" from relying on AEDPA in this case.

*Ground Six*:  Although the state appellate court reversed Petitioner's money laundering convictions based on Counts 18, 19, 20, and 33 following the State's concession that the checks involved were not "monetary instruments" for money laundering purposes, that same defect requires the reversal of the convictions on Counts 21, 31, and 32, and further, the jury instructions given were defective as to Counts 21, 31, 32, 44, and 45.[7]  Petitioner also asserts a "merger" argument based on a Supreme Court decision addressing a federal criminal statute.

*Ground Seven*:   The elder abuse, grand theft, and identity theft convictions are not supported by sufficient evidence.

*Ground Eight*:  The trial court erred in denying two recusal motion brought under California Penal Code § 1424.

---

[7]    The Court notes that the California Court of Appeal actually reversed the convictions on Counts 18, 19, 20, 21, and 33 [LD 36 at 45], and thus, Petitioner's arguments that habeas relief is needed regarding his Count 21 conviction is baseless.

*Ground Nine*:  The trial court erred in denying Petitioner's motion seeking the appointment of advisory counsel to deal with "expert issues."

*Ground Ten*:  The trial court erred in denying Petitioner's motion to strike and in allowing an unidentified witness "from WMC" to testify.

*Ground Eleven*:  The trial court abused its discretion in summarily denying Petitioner's motion for a new trial.

*Ground Twelve*:  The trial court abused its discretion in summarily denying Petitioner's California Penal Code § 1385 motion to dismiss.

*Ground Thirteen*:  The trial court abused its discretion in summarily denying Petitioner's California Penal Code § 1538.5(h) motion to suppress.

*Ground Fourteen*:  "Jury instruction issues" in violation of due process is the claim stated in the Petition.  Apparently, this involves the failure to give CALCRIM Nos. 3320 and 1806 and error in giving CALCRIM No. 252, which Petitioner labels "structural error."

*Ground Fifteen*:  "Sentencing issues, violating 14th Amendment concerns."

## THE EXHAUSTION ISSUE

Under 28 U.S.C. §2254(b)(1), the Court cannot grant the Petition unless, with respect to the habeas claim at issue, Petitioner has exhausted his available state court remedies or state corrective remedies either are unavailable or ineffective to protect Petitioner's rights.  Under Section 2254(b)(2), however, the Court may deny the Petition even if Petitioner has not exhausted available state remedies.

With one possible exception, the 15 Grounds alleged in the Petition were not raised and resolved in Petitioner's direct appeal proceedings.  As noted earlier, although Petitioner attempted to raise the bulk of his present claims in his direct appeal by seeking leave to file the Supplemental Brief on a pro per basis, the California Court of Appeal denied his request.  Thus, with the possible exception of one claim, the only means by which Petitioner can have exhausted his claims is

1 through the CSC Habeas Petition. Respondent contends that the Petition is

2 substantially unexhausted, arguing cursorily that Grounds Two, Four, and Seven

3 through Fifteen were not presented to and exhausted in the California Supreme

4 Court through Petitioner's direct appeal or the CSC Habeas Petition. [Return at 15-

5 16.] Petitioner, in his Traverse (at 4-6), asserts that he exhausted all of his claims

6 through his CSC Habeas Petition, because he attached a copy of the Supplemental

7 Brief to it and complained to the state high court that the California Court of Appeal

8 erred in failing to consider and resolve the claims alleged therein.

9     Given that Respondent concedes that Grounds One, Three, Five, and Six are

10 exhausted, and thus has waived the exhaustion defense as to those four claims, the

11 Court will deem these four claims to have been exhausted by Petitioner's direct

12 appeal and/or the CSC Habeas Petition. As to the remaining claims – Grounds Two,

13 Four, and Seven through Fifteen – these 11 claims were not resolved in Petitioner's

14 direct appeal and were not alleged within the body of the CSC Habeas Petition itself

15 (which pleaded only three grounds in the petition form). Rather, ten of the 11

16 claims were pleaded in an attached brief (the Supplemental Brief).[8]

17     Simply attaching a brief filed in another court to a habeas petition generally is

18 not sufficient to fairly present any claims alleged therein. *See, e.g., Baldwin v.*

19 *Reese*, 541 U.S. 27, 32 (2004). Moreover, while Petitioner claimed within the body

20 of the CSC Habeas Petition (as his second claim) that his appellate counsel provided

21 ineffective assistance by failing to raise the claims alleged in the Supplemental

22 Brief, this assertion arguably exhausted only that particular ineffective assistance

23 claim and not the underlying claims he asserted counsel should have raised. *See*

24 *Rose v. Palmateer*, 395 F.3d 1108, 1111-12 (9th Cir. 2005) (when petitioner argued

---

[8]     The Supplemental Brief attached to the CSC Habeas Petition raised Grounds Four through Fifteen of the instant Petition, but it did not raise Ground Two, nor was the claim alleged in Petitioner's appellate briefing. Thus, the immediate exhaustion question is whether Grounds Four and Seven through Fifteen were exhausted through the CSC Habeas Petition.

in state court that he was denied the effective assistance of counsel by trial counsel's failure to argue properly that his confession was inadmissible and appellate counsel's failure to raise a claim based on the trial court's adverse ruling on his motion to suppress, this exhausted only a Sixth Amendment ineffective assistance of counsel claim and did not raise and exhaust a claim based on the underlying Fifth Amendment violation; petitioner "did not fairly present the Fifth Amendment claim to the state courts when he merely discussed it as one of several issues which were handled ineffectively by his trial and appellate counsel," because "[w]hile admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts"); *Kelly v. Small*, 315 F.3d 1063, 1068 n.2 (9th Cir. 2003) (with respect to a claim of prosecutorial misconduct and a claim of ineffective assistance of trial counsel for failing to seek the prosecutor's recusal based on such misconduct, observing that "[a]lthough the grounds underlying the claim of ineffective assistance for failure to file a motion to recuse are nearly identical [to the prosecutorial misconduct claim], they remain separate constitutional claims" and petitioner was required to state them as "independent constitutional claim[s]" to exhaust them both); *see also White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005) (finding a *Batson* claim to be unexhausted even though, in the state courts, petitioner had discussed its substance within his habeas claim that appellate counsel should have raised the *Batson* issue on appeal, because "[w]hile these two claims are related due to the fact that the ineffective assistance claim is based on the failure to raise a *Batson* challenge, the two claims are analytically distinct").

That said, under the circumstances involved here, the inclusion of the Supplemental Brief as a part of the CSC Habeas Petition may have been sufficient to exhaust the habeas claims pleaded therein, as Petitioner contends. The CSC Habeas Petition attached both a lengthy letter Petitioner sent to appellate counsel discussing his claims and the Supplemental Brief (the same briefing on Grounds Four and

Seven through Fifteen of the Petition on which Petitioner relies here) and argued that these were the claims appellate counsel unreasonably had failed to pursue. Construed liberally, ground 2 of the CSC Habeas Petition incorporated the attached Supplemental Brief, and thus, there is an argument to be made that it fell within the "four corners" of the CSC Habeas Petition as is required for exhaustion purposes. *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005); *see Gentry v. Sinclair*, 705 F.3d 884 (9th Cir. 2013) ("The federal claim is fairly presented if raised in the petition itself, an accompanying brief, or another similar document filed with that court."). The Supplemental Brief, if read, would have alerted the California Supreme Court to the substance of the numerous claims Petitioner believed warranted relief. The CSC Habeas Petition was filed on a pro se basis and, when read liberally and as a whole, arguably presented the California Supreme Court with the opportunity to consider and resolve Grounds Four and Seven through Fifteen. Thus, it would not be unreasonable to conclude that Grounds Four and Seven through Fifteen *were* exhausted through the CSC Habeas Petition proceeding, in which the California Supreme Court denied relief without comment or citation to authority.

Even if the Court were to conclude that Grounds Four and Seven through Fifteen were not exhausted by the CSC Habeas Petition, this is not the end of the exhaustion inquiry for those claims as well as Ground Two. As Respondent concedes (Return at 1-2 n.1), if it is clear that the assertedly unexhausted claims would be procedurally barred by state law if raised on collateral review, the exhaustion requirement may be deemed satisfied, because state remedies no longer are available. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Johnson v. Zenon*, 88 F.3d 828, 831 (9th Cir. 1996). Given the already-filed and resolved CSC Habeas Petition, were Petitioner to seek to raise the assertedly unexhausted claims now through another, new state habeas petition, it is highly likely, if not certain, that California would apply at least its

14

procedural bar on successive petitions, if not other state law procedural bars (such as
untimeliness).  The Court so concludes, because the California Supreme Court, in
fact, has repeatedly applied the successive petition bar, as well as other procedural
bars, to subsequent habeas petitions filed by Petitioner related to the State Case.
[*See* Jan. 10, 2018 Orders in Case Nos. S245353, S244892, and S243052; Jan. 11,
207 Order in Case No. S238366; Sept. 14, 206 Order in Case No. S235634.]  And
while the likely applicable procedural bar(s) that give rise to satisfying the
exhaustion requirement might, in themselves, serve as a basis for denying relief
under the federal procedural default doctrine, Respondent has not invoked that
doctrine and, moreover, the Court would be inclined to bypass any possible
procedural default issue and proceed to the merits of the claims.  *See Lambrix v.
Singletary*, 520 U.S. 518, 525 (1997) (federal habeas court may bypass question of
procedural default to deny claim on merits); *see also Flournoy v. Small*, 681 F.3d
1000, 1004 n.1 (9th Cir. 2012) ("While we ordinarily resolve the issue of procedural
bar prior to any consideration of the merits on habeas review, we are not required to
do so when a petition clearly fails on the merits."); *Franklin v. Johnson*, 290 F.3d
1223, 1232 (9th Cir. 2002) ("[C]ourts are empowered to, and in some cases should,
reach the merits of habeas petitions if they are . . . clearly not meritorious despite an
asserted procedural bar.").

    As a final consideration, as noted above, under Section 2254(b)(2), the Court
may deny an unexhausted claim on its merits.  As the Ninth Circuit has explained, if
a claim is unexhausted and it is perfectly clear that the petitioner cannot prevail, the
claim may be denied on its merits notwithstanding its unexhausted nature.  *See
Dixon v. Baker*, 847 F.3d 714, 722 (9th Cir. 2017); *Cassett v. Stewart*, 406 F.3d 614,
623-24 (9th Cir. 2005).  For the reasons discussed below, the Court finds that
standard satisfied as to Grounds Two, Four, and Seven through Fifteen.

    Under all these circumstances, and based on liberally construing the record in
Petitioner's favor, the Court will deem Grounds Four and Seven through Fifteen to

have been exhausted in addition to Grounds One, Three, Five, and Six.[9]  Thus, all 14 of these claims may be considered on their merits.  Ground Two, however, remains unexhausted but, following review, may be denied on its merits under Section 2254(b)(2).

## STANDARDS OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996, as amended ("AEDPA"), a habeas petitioner whose claim was decided on its merits may not receive federal habeas relief unless the state court's adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2).").  The above AEDPA standard "demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*).

When Section 2254(d) governs a case, a federal habeas court typically looks to the rationale employed by the state court in denying relief, assuming there is a reasoned decision setting forth the state court's rationale.  In California, however, many claims are raised through state habeas proceedings and the decisions rendered in those proceedings usually are summary in nature, such as occurred here with respect to the CSC Habeas Petition.  When a state court's merits decision does not

---

[9]    As discussed in connection with Ground One, two aspects of that claim were not raised in the state courts and, thus, are unexhausted.  The Court has considered them on their merits, because it is readily apparent that they are without merit.

1   contain an explanation of the state court's underlying reasoning, "the habeas

2   petitioner's burden still must be met by showing there was no reasonable basis for

3   the state court to deny relief." *Richter*, 562 U.S. at 98.  In such an instance, a federal

4   habeas court must determine what arguments or theories "could have supported" the

5   state court's decision and then assess whether the foregoing standards are met as to

6   any such arguments or theories.  *Id.* at 102.  In this instance, the federal court

7   engages in an independent review of the record and then decides whether or not the

8   state court's decision was objectively unreasonable under the Section 2254(d)

9   standards.  *See, e.g., Murray v. Schriro*, 882 F.3d 778, 802 (9th Cir. 2018) (when

10  there is no reasoned decision on the merits, "our duty under AEDPA is not

11  absolved" and a federal habeas court must determine what arguments or theories

12  could have supported the state court's summary decision; also noting that this task

13  does <u>not</u> involve a de novo review of the constitutional question).

14          For purposes of Section 2254(d)(1), the relevant "clearly established Federal

15  law" consists of Supreme Court holdings (not dicta), applied in the same context

16  that Petitioner seeks to apply it, existing at the time of the relevant state court

17  decision.  *See Lopez v. Smith*, 574 U.S. 1, 2, 4 (2014) (*per curiam*); *see also Greene*

18  *v. Fisher*, 565 U.S. 34, 40 (2011) ("clearly established Federal law" under Section

19  2254(d)(1) is the law that exists at the time of the state court adjudication on the

20  merits).  This requires a relevant Supreme Court holding that "squarely addresses

21  the issue in" the habeas case and provide a "clear answer to the question presented";

22  absent such clearly established federal law, relief under Section 2254(d)(1) "is

23  unauthorized." *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam).  A

24  state court acts "contrary to" clearly established Federal law if it applies a rule

25  contradicting the relevant holdings or reaches a different conclusion on materially

26  indistinguishable facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003).  A state court

27  "unreasonably appli[es]" clearly established Federal law if it engages in an

28  "objectively unreasonable" application of the correct governing legal rule to the

facts at hand; however, Section 2254(d)(1) "does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S. 415, 134 S. Ct. 1697, 425-27 (2014). "And an 'unreasonable application of' [the Supreme Court's] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Id.* at 419 (citation omitted). "The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Landrigan*, 550 U.S. at 473.

For claims governed by Section 2254(d)(2), a state court has made an "unreasonable determination of the facts" when either its findings were not supported by "substantial evidence" in the state court record or its fact-finding process was "deficient in some material way." *See Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). However, a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).Section 2254(d)(2) "requires" a federal habeas court to accord the state court's factual findings "substantial deference." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). The petitioner must show that the state court's decision was based on factual findings that were not merely incorrect but "'objectively unreasonable.'" *Hibbler*, 693 F.3d at 1146 (citations omitted).

When a claim is governed by the Section 2254(d) standard of review, federal habeas relief may not issue unless "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Richter*, 562 U.S. at 102. To obtain habeas relief, a petitioner "must show that" the state decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by

1  overturning their decisions only when there could be no reasonable dispute that they

2  were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (*per curiam*).  This

3  standard is "difficult to meet," *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013), as

4  even a "strong case for relief does not mean the state court's contrary conclusion

5  was unreasonable," *Richter*, 562 U.S. at 102.  "[S]o long as 'fairminded jurists could

6  disagree' on the correctness of the state court's decision," habeas relief is precluded

7  by Section 2254(d).  *Id.* at 101 (citation omitted).  "AEDPA thus imposes a 'highly

8  deferential standard for evaluating state-court rulings,' … and 'demands that state-

9  court decisions be given the benefit of the doubt.'"  *Renico v. Lett*, 559 U.S. 766,

10  773 (2010) (citations omitted).

11

12  *Grounds One and Three Through Fifteen:*

13          As the Court has found earlier, Grounds One and Three through Fifteen were

14  exhausted by way of the CSC Petition, which the California Supreme Court denied

15  summarily, without comment or citation to authority.  That silent denial of habeas

16  relief constituted a denial on the merits.  *See Walker v. Martin*, 562 U.S. 307, 310,

17  (2011) ("A spare order denying a petition without explanation or citation ordinarily

18  ranks as a disposition on the merits."); *Richter*, 562 U.S. at 99 ("When a federal

19  claim has been presented to a state court and the state court has denied relief, it may

20  be presumed that the state court adjudicated the claim on the merits in the absence

21  of any indication or state-law procedural principles to the contrary.").  This

22  presumption that a silent denial constitutes a merits decision can be overcome only

23  "when there is reason to think some other explanation for the state court's decision

24  is more likely." *Richter*, 562 U.S. at 99-100.  No such explanation has been

25  proffered by either party nor is one apparent here, and thus, the California Supreme

26  Court's decision is deemed to constitute a merits decision.  Accordingly, these

27  claims are governed by the above-described standard of review, with one

28

exception.[10]

*Ground Two:*

As also discussed earlier, Petitioner's second claim is unexhausted.  There is no merits decision on the claim, because Petitioner failed to present it to the California Supreme Court.  Accordingly, the Section 2254(d) standard does not apply to Ground Two and it will be reviewed on a de novo basis.  *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *see also Cone v. Bell*, 556 U.S. 449, 472 (2009) (when a state court did not reach the merits of a federal claim, review is de novo).

## DISCUSSION

### I.    Ground One:  Lack Of Personal Jurisdiction Claim

By Ground One, Petitioner contends that an investigator employed by the Riverside County District Attorney's Office (Darren J. Mannion) used false and forged documents to manipulate a state court magistrate, the U.S. Marshals Service located in Birmingham, Alabama (where, at the relevant time, Petitioner was incarcerated in a federal institution), and the Alabama state court system, as well as to mislead Petitioner, ultimately resulting in his transport to California to face the State Case charges.  More specifically, Petitioner alleges that Mannion:  used the October 17, 2006 criminal complaint that instituted the State Case [CT 1-7, the "Criminal Complaint"] to manipulate federal marshals and state courts into allowing Petitioner to be released for transport to California to face charges in the State Case, in violation of California criminal laws regarding forgery and kidnapping; and

---

[10]    By Ground Five, Petitioner contends that this Court is "judicially estopped" from applying the Section 2254(d) standard of review to any of his claims.  As discussed *infra*, he is mistaken.

As noted earlier and discussed below, two portions of Ground One are unexhausted, and thus, they have received de novo review.

1   manipulated Petitioner by failing to show him the Criminal Complaint, which kept
2   Petitioner from seeking habeas or injunctive relief to prevent his transfer to
3   California.

4          As pleaded herein, Petitioner's theory that the Criminal Complaint was
5   "false" and "forged" rests on his contention that the crimes with which he was
6   charged did not take place in Riverside County.  Petitioner asserts that the activities
7   on which the crimes alleged in the Criminal Complaint were based occurred,
8   instead, in Los Angeles and San Bernardino Counties.  Petitioner reasons that,
9   therefore, when the Criminal Complaint alleged, through 23 Counts, that Petitioner
10  had committed various crimes in Riverside County, these allegations were false,
11  forged, and perjurious.  [Pet. Mem. at 3; Traverse at 9-11.]

12          Petitioner contends that, due to this assertedly false representation in the
13  Criminal Complaint about where Petitioner's crimes occurred, Mannion's use of the
14  Criminal Complaint in connection with his efforts to bring Petitioner to California
15  was wrongful and violated state criminal laws regarding forgery and kidnapping.
16  Petitioner concludes that the false nature of the Criminal Complaint rendered his
17  transfer to California for trial in the State Case wrongful, and thus, the trial court
18  lacked personal jurisdiction to try him.  He also asserts, conclusorily, that he had a
19  "liberty interest" under California Penal Code §§ 118A, 207(d), 470(6), and
20  530.5(A) and under 18 U.S.C. § 3401 in not having this happen to him.  [Petition at
21  5; Pet. Mem. at 12-13.]  While Petitioner raised his lack of personal jurisdiction
22  theory and claim in the CSC Habeas Petition (through the Supplemental Brief) and,
23  thus, that particular claim is exhausted and subject to AEDPA deferential review, he
24  did not raise his liberty interest claim in that state court filing and, thus, that
25  particular due process claim is not exhausted and will be reviewed on a de novo
26  basis.

27          Finally, Petitioner asserts that Mannion violated the Fourth Amendment by
28  gathering unspecified "'privacy protected' information and using it to obtain a

search warrant.  Petitioner alleges that Mannion misled a state court magistrate in
Riverside to issue a search warrant, which then "was executed in North Carolina, to
search a location in Birmingham, Alabama."  [Pet. Mem. at 4.]   As with Petitioner's
unexhausted "liberty interest" claim, Petitioner did not raise this Fourth Amendment
claim in the CSC Habeas Petition or through the attached Supplemental Brief, and it
also is unexhausted and will be reviewed on a de novo basis.

## A. Background[11]

The Criminal Complaint was filed on October 17, 2006, and through 23
Counts, alleged that Petitioner and his co-defendants committed felonies in
Riverside County.  [CT 1-7.]  In a declaration filed that same day in support of an
arrest warrant for Petitioner, Mannion stated that Petitioner had used a fictitious
driver's license to lease office space in Riverside County under the name of "Larry
Perry" to set up a business named "Fidelity Escrow."  Mannion then described
various transactions in which Fidelity Escrow had been involved, which related to
real estate located in San Bernardino, Los Angeles, and Riverside Counties and loan
proceeds that actually were, or were supposed to be, wired to Fidelity Escrow, from
which Petitioner then issued checks to himself and others.  The warrant issued on
that same day.  [CT 8-10.]

Petitioner was arraigned in the State Case on November 13, 2006, and a
public defender was appointed.  [CT 70.]  The Criminal Complaint thereafter was
amended and Petitioner again was arraigned, represented by counsel.  At that
hearing, Petitioner waived time as to the preliminary hearing, which was continued
to December 11, 2006, and then several times and ultimately to January 3, 2007.

---

[11]    The Court sets forth a fairly detailed description of pretrial proceedings at this juncture,
because while only some of the proceedings relate to Ground One, others relate to the remaining
Grounds of the Petition and discussing them together in a single narrative is efficient.

22

1  [CT 77, 126, 136, 139.]  A third amended complaint was filed on December 18,

2  2006.  [CT 129-35.]

3      On December 18, 2006, Petitioner's counsel filed a demurrer to/motion to

4  dismiss the third amended complaint on the ground that numerous of the counts

5  alleged were based on properties in San Bernardino or Los Angeles Counties and/or

6  transactions that occurred in Los Angeles County and that, therefore, Riverside

7  County did not have jurisdiction over crimes related to these underlying properties

8  and transactions.  [CT 142-50, 165-77 (supplement).]  On January 3, 2007, the trial

9  court held a hearing on the demurrer, at which Petitioner was represented by

10  counsel.  On a count-by-count basis, Petitioner's counsel argued that the trial court

11  lacked jurisdiction over the counts in question, because the real properties involved

12  were located in other counties and no transactions had occurred in Riverside

13  County.  The prosecutor responded by arguing that, as to one of the properties, the

14  owner was a resident of Riverside County but that, in any event, in all of the charged

15  transactions, Fidelity Escrow – the sham escrow company with an office located in

16  Riverside – was the facilitator and the transactions could not be consummated

17  without it and that, in some instances, money was wired to Fidelity in connection

18  with the fraudulent transactions.  The parties' arguments were vigorous and lengthy.

19  The trial court denied the demurrer, finding that Fidelity Escrow was integral to the

20  whole scheme, was a front opened to facilitate the fraud and created a sufficient

21  nexus to Riverside County, and there was sufficient evidence to try the State Case in

22  Riverside County.   [CT 157; RT 11-37.]

23      Petitioner's counsel also made a motion under California Penal Code §

24  786(b)(2) challenging jurisdiction in Riverside County.  [RT 4-5, 37.]  After hearing

25  argument, the trial court indicated that it would not sever the counts and that they

26  would be tried in the State Case.  [RT 38-43.]  Petitioner's counsel then asserted that

27  Petitioner was entitled to an evidentiary hearing on the Section 786(b)(2) issue,

28  including to receive evidence that the other jurisdictions were consenting to have the

counts tried in the State Case.  The trial court agreed and continued the Section

786(b)(2) hearing.  [CT 157-58; RT 43-44.]

       The preliminary hearing then took place over three days.  Petitioner continued

to be represented by counsel.  The trial court found sufficient cause to hold

Petitioner to answer on all charges.  [CT 154-56, 192-93, 222-23, 226-27, 230-31,

239-424.]

       At the conclusion of the preliminary hearing, on February 16, 2007,

Petitioner's counsel re-raised the Section 786(b)(2) motion.  The prosecutor

provided a letter from the San Bernardino County District Attorney's Office and the

Los Angeles County District Attorney's Office, in which both District Attorneys

agreed that the trial on all of the counts alleged in the State Case should proceed in

Riverside County and that San Bernardino County and Los Angeles County would

cede jurisdiction on those counts.  The trial court found the evidence sufficient to

show that San Bernardino County and Los Angeles County had concurred in the

filing decision made by Riverside County and had turned over jurisdiction to

prosecute, and then denied Petitioner's Section 786(b)(2) motion.  [CT 230, 406-

08.]

       On March 19, 2007, Petitioner's counsel filed another demurrer, this time to

all but two of the 26 counts alleged in the Information as well as to the aggravating

factors.  Counsel again argued, *inter alia*, that the Riverside court lacked jurisdiction

over the subject counts, because they involved properties located, and transactions

that occurred, in other counties.  [CT 456-480.]  On April 13, 2007, prior to the

hearing on the demurrer, Petitioner made an oral motion to represent himself, which

the trial court granted.  [CT 503; RT 62-67.]  The trial court continued the hearing

on the demurrer to April 27, 2007.  [RT 69-70.]  On April 25, 2007, Petitioner filed

an addendum to the demurrer [CT 512-15.]

       On May 11, 2007, the trial court held a hearing on the demurrer.  [RT 118.]

Petitioner argued that the prosecutor perjured himself in signing a complaint

alleging that the charged felonies were committed in Riverside County, because he knew that there was no jurisdiction in Riverside County. Petitioner argued that the magistrate thereby was misled and that the related search and arrest warrants that issued were invalid because of the perjury and lack of jurisdiction – the same theory he espouses in Ground One. The trial court repeatedly pointed out to Petitioner that a demurrer is limited to the four corners of the complaint and that his desire to argue extraneous matters (such as what the prosecutor knew) had to be raised by a California Penal Code § 995 motion. Petitioner argued that the alleged perjury and false information in the complaint barred the State Case and that the prosecution had "perjured themselves and misled the magistrate by putting Riverside in there then they know that Riverside was not involved," which allowed the trial court to look beyond the four corners of the complaint. [RT 119-30.] The trial court denied the demurrer, finding that "there is sufficient legal justification alleged in the Information along with the procedures set forth in Penal Code Section 786, subdivision (b) – subsection (b), Subdivision (2), that both Los Angeles and San Bernardino County have conferred jurisdiction in the prosecution of this case to Riverside County." [CT 534; RT 130.]

On May 24, 2007, Petitioner filed a motion to suppress evidence seized in California, Alabama, and South Carolina, as well as from bank accounts, pursuant to California Penal Code § 1538.5. The motion reiterated Petitioner's contention that the prosecutor committed perjury in the Criminal Complaint to manufacture jurisdiction and thereby had misled the magistrate. Petitioner asserted that each warrant was based on false information, because no public offense has been committed, and this false information misled the magistrate who issued the warrants. [CT 556-62, the "Section 1538.5 Motion."] On the same day, Petitioner filed a motion to dismiss pursuant to California Penal Code § 995. The motion raised a number of grounds, including that jurisdiction was lacking because no public offenses had been committed and that the prosecution committed perjury in

1   the original Criminal Complaint and in connection with warrants.  [CT 568-634, the

2   "Section 995 Motion."]  On May 29, 2007, Petitioner filed a "Memorandum of

3   Law" outlining his arguments about why jurisdiction was lacking.  [CT 635-42.]  On

4   June 1, 2007, Petitioner filed an Addendum to the Section 995 Motion and an

5   Addendum to the Section 1538.5 Motion.  [CT 650-54.]

6         At a hearing on June 1, 2007, the trial court noted that, by the Section 1538.5

7   Motion, Petitioner really was challenging the information in the warrants as being

8   untrue, which more appropriately would be considered through a motion to quash

9   the warrants and/or to traverse the warrants, with which Petitioner agreed, and the

10   trial court expanded the scope of the Section 1538.5 Motion to be considered as also

11   seeking to quash or traverse the warrants.  [RT 135-36.]  The prosecutor filed an

12   opposition to the Section 995 Motion on June 28, 2007, arguing, *inter alia*, that the

13   court had already resolved the jurisdictional issue through its rulings on January 3,

14   2007, and on February 16, 2007, and in any event, while the crimes charged spanned

15   multiple counties, there was a sufficient nexus to Riverside County to prosecute

16   them there and jurisdiction existed under California Penal Code §§ 777 and 781.

17   [CT 903-05.]  The prosecutor made this same argument in a separate opposition

18   filed as to the Section 1538.5 Motion.  [CT 1003-05.]  Petitioner filed a number of

19   further briefs with respect to both Motions.  [CT 1109-168, 1194-1241, 1343-1544,

20   1644-76, 2338-39, 2356-65, 2368-86, 2387-571, 2572-746, 2747-56, 3411-14.]

21         The trial court scheduled hearings on the Section 995 Motion and the Section

22   1538.5 Motion (as expanded by the trial court to include a motion to quash and/or

23   traverse the search warrants) for September 20, 21, and 28, 2007, October 5, 12 and

24   25, 2007, November 5 and 16, 2007, December 7 and 21, 2007, January 25, 2008,

25   February 8, 28, and 29, 2008, March 21, 2008, April 11, 2008,  May 2 and 22, 2008,

26   June 13 and 25, 2008, July 25, 2008, August 29, 2008, October 3, 2008, November

27   21, 2008, December 12, 2008, January 16, 2009, February 6 and 27, 2009, March 2,

28   2009, April 17, 2009, May 29, 2009, June 5, 19 and 26, 2009, August 7, 2009,

1    September 11, 2009, March 5, 2010, June 21, 28, 29, and 30, 2010, July 1, 12, 13,

2    14, and 15, 2010, and periodically ordered further briefing with respect to the

3    Section 1538.5 Motion as it had been expanded.  Hearings with argument were held

4    on some of those dates and the Motions were simply continued on others, often at

5    Petitioner's request.  [*See* CT 1262-64, 1272-75, 1282-85, 1306-08, 1314-16, 1546-

6    49, 1558-61, 1591-94, 1679, 1715, 2207, 2306, 2325, 2332, 2765, 2823, 2826, 2828,

7    2832, 2848, 2852, 2858, 2860, 2866, 2868, 2874, 2876, 2895, 2903, 2913-14, 2922,

8    2926, 2954, 2960, 3353, 3357, 3439, 3441, 3497, 3500, 4256, 4362, 4369-450,

9    4478, 4496, 4511, 4590, 5153-54, 5893, 5900-01, 5962, 5991, 6006, 6009-10, 6019-

10   21, 6036-38, 6049-50, 6080-81, and 6108-09; RT 171-235, 236-84, 287-342, 345-

11   46, 363-80, 457-96, 527-50, 569-92, 592-99, 793-828, 829-37, 839-49, 852-55, 869-

12   83, 886-964, 968-73, 979-86, 988-93, 994-1008, 1038-41, 1045-47, 1288, 1857-58,

13   2385-429, 2508, 2748-79, 2812-71, 2875-3094, 3109-177, 3210-228, and 3239-93.]

14       Over time, the Section 1538.5 Motion effectively expanded to encompass

15   relief sought by way of a motion to quash and/or traverse the warrants as the

16   hearings proceeded, and both Petitioner and the prosecutor filed numerous

17   additional briefs between 2008 and 2010.  [*See, e.g.,* CT 5153-54, listing briefing as

18   of March 5, 2010.]  (The Court will continue to reference the transformed and

19   expanded motion as the "Section 1538.5 Motion" for clarity's sake.]  The hearing on

20   the expanded Section 1538.5 Motion was effectively suspended while a second

21   California Penal Code § 995 motion brought by Petitioner was heard between Fall

22   2009 and June 2010.[12]  In addition, the case was assigned to another judge as of

23   February 19, 2010.  [CT 5039; RT 1830.]  At February 19, 2010, and March 5, 2010

24   hearings, the parties advised the newly-assigned judge that there had been hearings

25   on the expanded Section 1538.5 Motion, but they not been completed, and that the

---

[12]     At June 2, 3, 15, and 17, 2010 hearings, the newly-assigned trial judge resolved Petitioner's second Section 995 motion and, as the prior trial judge had done, found that jurisdiction existed.  [CT 5808-09, 5867-69, 5886-87; RT 2048-63, 2069-278, 2282-333, 2335.]

1    prior trial judge had gotten through only some of the search warrants in the prior

2    hearings.  [CT 5154; RT 1831, 1857-58, 1873.]

3         Over the course of the numerous hearings actually held, the trial court granted

4    the 995 Motion, in part, and denied it, in part.  With respect to the Section 1538.5

5    Motion, the trial court denied a portion of the original request for relief under

6    Section 1538.5 on February 29, 2008, but continued the matter for further hearing,

7    including as to the expanded version of the Motion (*i.e.*, to quash and/or traverse) at

8    subsequent hearings and for the taking of documentary evidence and live testimony.

9    [CT 5154, 5893, 5900-01, 5962, 5991, 6006, 6009-10, 6019-21, 6036-38, 6049-50,

10   6080-81, 6108-09; RT 782-839, 840, 869-80, 886-964, 2385-429, 2508, 2748-79,

11   2812-71, 2875-3094, 3109-177, 3210-228, and 3239-93.]  Ultimately, the expanded

12   Section 1538.5 Motion, including the motion to traverse the warrants, was finally

13   denied in all its remaining respects.  [RT 3291-93.]

14        Voir dire proceedings commenced on July 19, 2010, and concluded on July

15   27, 2010, and the trial proceeded.  [CT 6199, 6205-06; RT 3304, 3334-45, 3357,

16   3360.]

17        While pre-trial proceedings were ongoing, Petitioner repeatedly sought pre-

18   trial writs of habeas corpus, mandamus, and/or prohibition in the state courts related

19   to various complaints.  [*See, e.g.,* LD 6-17.]  He sought similar relief related to his

20   assertions that Riverside County lacked jurisdiction and that there were issues with

21   warrants.  [LD 19-25.]  Petitioner also filed 28 U.S.C. § 2241 habeas actions in this

22   District.  Case No. 5:08-cv-00258-DSF (SH) was filed on February 26, 2008, and

23   Petitioner complained therein of excess delay, the trial court's failure to adjudicate

24   Petitioner's motion to dismiss (and thus, failure to adjudicate his federal

25   constitutional claims), and a deprivation of access to court.  The case was dismissed

26   without prejudice on October 27, 2008, pursuant to the abstention doctrine of

27   *Younger v. Harris*, 401 U.S. 37 (1971).  On January 20, 2009, Petitioner filed

28   another Section 2241 petition in Case No. 5:09-cv-00134-DSF (SH), in which he

1   challenged the trial court's February 29, 2008 ruling related to the Section 1538.5

2   Motion and the conversion of the motion to one traversing the warrants.  On March

3   2, 2010, the case was dismissed without prejudice, again pursuant to the *Younger*

4   abstention doctrine.

5        While Petitioner was seeking federal habeas relief with respect to the instant

6   underlying State Case proceeding in Riverside County, he also sought Section 2241

7   relief based on his complaints about a criminal action pending against him in Los

8   Angeles County, in Case No. 2:08-cv-07972-TJH (SH).  On November 16, 2009,

9   that case also was dismissed pursuant to *Younger* abstention principles.

10       Petitioner appealed the dismissal of all three Section 2241 cases (Ninth

11  Circuit Case Nos. 08-56947, 10-55281, and 10-55521), and he was appointed

12  counsel in connection with the 08-258 and 08-7972 cases.  In the appeal stemming

13  from Case No. 05:09-cv-00134-DSF (SH), on May 27, 2010, the Ninth Circuit

14  denied a certificate of appealability, and on August 3, 2010, denied Petitioner's

15  request for reconsideration.  On October 8, 2010, in the other two appeals, the Ninth

16  Circuit issued a single memorandum decision.  It dismissed the portion of the appeal

17  challenging the delay in ruling on pretrial motions, because it had been mooted by

18  the commencement of Petitioner's trial and the ruling on all motions by then.  The

19  Ninth Circuit affirmed the abstention-based dismissals by the District Court with

20  respect to the portion of the appeal in which Petitioner asserted that he could not be

21  tried because the state had failed to follow its own pretrial commitment procedures

22  and that Petitioner's separate prosecution in Los Angeles should be dismissed,

23  reasoning that these issues could be raised adequately in Petitioner's direct appeals

24  in the state courts should he be convicted.

25

26       **B. Petitioner's Personal Jurisdiction Claim Fails.**

27       Petitioner's Ground One/lack of personal jurisdiction claim rests on the

28  premise that the Criminal Complaint was based on "falsity" and "forgery" and

29

1   "perjury," because it alleged that the charged crimes took place in Riverside County.

2   According to Petitioner, the charged crimes took place in other counties.  As

3   described in detail above, Petitioner did attempt to challenge his prosecution on this

4   basis prior to trial.  Both Petitioner's counsel and Petitioner himself (once he

5   decided to proceed *pro per*) repeatedly raised with the trial court the contention that

6   the court lacked jurisdiction to try Petitioner for some, if not all, of the crimes

7   alleged, because they were not committed in Riverside County.  Each time, the trial

8   court rejected these arguments, finding that a sufficient nexus existed with Riverside

9   County for the crimes to be prosecuted there and, moreover, that Los Angeles and

10  San Bernardino Counties had ceded jurisdiction over the crimes to Riverside

11  County.

12          Ground One conflates two issues, subject matter jurisdiction and personal

13  jurisdiction.  The predicate for Ground One – Petitioner's argument that the charged

14  crimes took place in other counties – is an attack on the trial court's subject matter

15  jurisdiction.  His Ground One theory based on that predicate is that it therefore was

16  false for the Criminal Complaint to allege that subject matter jurisdiction existed in

17  Riverside County, which in turn rendered the basis for his arrest and transmittal to

18  California (the Criminal Complaint) invalid and thus deprived the trial court of

19  personal jurisdiction.  Petitioner, however, has not shown that the trial court's

20  rulings that jurisdiction existed in the State Case were objectively unreasonable, nor

21  has Petitioner shown that the California Supreme Court acted unreasonably –

22  factually or legally – in rejecting Petitioner's Ground One jurisdiction argument.

23          California law contemplates that jurisdiction over crimes may exist in

24  multiple counties.  *See, e.g.,* California Penal Code §§ 781, 782, 786.  The trial court

25  considered the arguments made by Petitioner and his counsel that the crimes

26  occurred solely within other counties and flatly rejected them for the reasons noted

27  earlier and, further, relied on the fact that the other counties had ceded jurisdiction,

28  as California law allows.  Petitioner has not shown any error in that decision and the

30

1   state high court's failure to overturn it.  *See Burns v. Municipal Court*, 195 Cal.

2   App. 2d 596, 599-600 (1961) (jurisdiction over the offense is acquired by the filing

3   of a complaint in a court in the jurisdictional territory, and jurisdiction over the

4   defendant is acquired by arrest, either with or without a warrant).  And in any event,

5   Petitioner's jurisdiction argument does not raise any issue of federal constitutional

6   dimension, because at its heart, the claim involves solely a question of California

7   law, *i.e.,* whether, under California's jurisdictional provisions for criminal cases, the

8   County of Riverside was allowed to assert jurisdiction over the charges alleged in

9   the Criminal Complaint?  This California law issue is not one that is cognizable on

10  federal habeas review.  *See* 28 U.S.C. § 2241(c)(3); *Estelle v. McGuire*, 502 U.S. 62,

11  67-68 (1991) (federal habeas writs may not issue on the basis of a perceived error of

12  state law interpretation or application).

13          More importantly for Ground One, Petitioner has not shown that the Criminal

14  Complaint was, as he contends "false and forged" at all, *i.e.,* that subject matter

15  jurisdiction did not exist to try him in Riverside County.  The trial court articulated

16  its reasons for finding it proper to try the State Case in Riverside County and for

17  jurisdiction to exist, including the integral role played by the fraudulent escrow

18  company set up by Petitioner in Riverside.  While Petitioner (obviously) disagrees

19  with that state law finding and has a different view as to the county/ies in which he

20  properly should have been prosecuted, he has not persuaded any California court

21  that he is correct and the trial court was wrong.  Petitioner's contention – that the

22  Criminal Complaint's jurisdictional allegation was "false" and, thus, the state and

23  federal authorities that were presented with it were duped into issuing an arrest

24  warrant, releasing Petitioner into Riverside County's custody, and allowing the State

25  Case to proceed – is devoid of support.  There is simply no basis for finding that

26  Riverside County lacked jurisdiction over Petitioner to try him in the State Case.

27  The California Supreme Court's failure to grant habeas relief on this claim was

28

1    objectively reasonable for purposes of both Section 2254(d)(1) and (2).[13]

2         Petitioner's second Ground One contention – that the issuance of the Criminal

3    Complaint and Petitioner's related arrest and transport to Riverside County to face

4    the State Case charges constituted the crimes of perjury, forgery, and kidnapping

5    under the California Penal Code – is patently meritless.  To the extent that this

6    contention rests on Petitioner's belief that the Criminal Complaint and related arrest

7    warrant were false, forged, and perjurious, it fails for the reasons noted above.  In

8    any event, it is beyond dispute that California law allows for the filing of a criminal

9    complaint charging a defendant with crimes to be presented to a magistrate for the

10   related issuance of a warrant for that defendant's arrest.  *See, e.g.,* California Penal

11   Code §813(a).  When a charged defendant for whom an arrest warrant has issued is

12   located outside of California, there are established legal mechanisms that allowed

13   California law enforcement officials to obtain custody over such a defendant and

14   bring him to the California county in which he is charged.

15        When, as happened in this case, the defendant is a prisoner in another state,

16   the Interstate Agreement on Detainers Act (IAD) applies, which provides for the

17   administrative transfer of prisoners who are wanted by other states for trial.  *See*

18   California Penal Code § 1389 *et seq.*  Actions taken by law enforcement officials in

19   this respect to obtain the transfer of Petitioner from his federal custody in Alabama

20   to Riverside County to stand trial in the State Case were legally authorized by the

21   IAD and did not constitute the California law crimes of perjury, forgery, or

22   kidnapping.  Petitioner's contention otherwise is specious, and his reliance on

23   *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974), is woefully misplaced.

24   That decision merely held that, under the egregious facts alleged in that case, a

25    

26   [13]     There also was nothing objectively unreasonable about the state high court's rejection of
     Petitioner's contention that, had he seen the Criminal Complaint, he would have been able to
27   move for habeas or injunctive relief in Alabama to prevent his transfer to California.  As there was
     nothing false or forged or perjurious in the Criminal Complaint, there was no legitimate basis for
28   seeking such relief in Alabama, and in any event, it would not have succeeded.

hearing should be held on the defendant's allegations that he was not a U.S. citizen, he had been kidnapped in Uruguay by way of physical assault after having been subjected to illegal wiretapping there, tortured and interrogated for three weeks, and then brought to the United States to be prosecuted without any formal or informal request by the United States for his extradition. Significantly, however, the Second Circuit qualified its order by stating that no such hearing was required unless the defendant offered credible supporting evidence for his allegations. *Id.* at 281. Petitioner, of course, was not kidnapped and, instead, was brought to Riverside County pursuant to lawfully-issued process. The *Toscanino* decision is irrelevant to this case.

The Court finds facially meritless Petitioner's related and unexhausted contention that he had a "liberty interest" under the California Penal Code provisions for the crimes of kidnapping, forgery, perjury, and identity theft[14] and that, as a result, his federal right to procedural due process was violated when he was returned to California and held to answer in the State Case. Plainly, no crimes were committed under these California Penal Code provisions when Petitioner was brought to California pursuant to an arrest warrant to stand trial. Moreover, Petitioner had no "liberty interest" arising from these state criminal laws to which procedural due process adheres. These penal statutes simply codify the crimes involved and do not purport to establish any substantive or procedural rights on Petitioner's behalf, nor do they establish any privilege of which he has been deprived without procedural due process. The liberty interest decisions Petitioner

---

[14]  Petitioner also asserts that he had a "liberty interest" under 18 U.S.C. § 3401 – the federal criminal statute allowing United States Magistrate Judges to try and sentence persons accused of misdemeanors – and this this purported "liberty interest" was violated by the issuance of the Criminal Complaint and Mannion's actions in obtaining permission from Alabama officials to transport Petitioner to Riverside County. Petitioner's assertion is, quite frankly, a head-scratcher, as there is zero apparent relationship between this federal criminal code provision and any of the matters alleged in the Petition. At a minimum, however, it is clear that this federal statute did not afford Petitioner a "liberty interest" in connection with any of the matters of which he complains.

33

1  cites have nothing whatsoever to do with his situation.  His "liberty interest"

2  subclaim is factually and legally frivolous.

3       The state high court's rejection of Petitioner's lack of personal jurisdiction

4  claim, to the extent the claim was exhausted, was not objectively unreasonable

5  under either Section 2254(d)(1) or 2254(d)(2).  Thus, relief based on this portion of

6  Ground One is precluded.  Petitioner's "liberty interest" subclaim asserted through

7  Ground One, while not exhausted, appropriately may be, and must be, denied, under

8  Section 2254(b)(2), because it is perfectly clear that the claim is without merit.

9

10  **C.  Petitioner's Search Warrant Claim Is Not Cognizable.**

11       The final aspect of Ground One is Petitioner's unexhausted contention that

12  Mannion violated the Fourth Amendment by utilizing private information to obtain

13  a search warrant, which then was executed in another state.  As Respondent

14  correctly points out, this claim is barred by the doctrine established by the Supreme

15  Court in *Stone v. Powell*, 428 U.S. 465, 494 (1976).

16       Under *Stone*, "[a] Fourth Amendment claim is not cognizable in federal

17  habeas proceedings if a petitioner has had a full and fair opportunity to litigate the

18  claim in state court."  *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

19  To receive federal habeas consideration of a claim that evidence was obtained in

20  violation of the Fourth Amendment, a petitioner bears the burden of demonstrating

21  that the state courts did not provide him with a full and fair hearing.  *See Woolery v.*

22  *Arave*, 8 F.3d 1325, 1327-28 (9th Cir. 1993).  In determining whether a habeas

23  petitioner has had a full and fair opportunity to litigate his Fourth Amendment claim

24  in state court, "[t]he relevant inquiry is whether petitioner had the opportunity to

25  litigate his claim, not whether he did in fact do so or even whether the claim was

26  correctly decided."  *Ortiz-Sandoval*, 81 F.3d at 899 (emphasis added); *see also*

27  *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990) (as long as the petitioner "had

28  an opportunity in state court for 'full and fair litigation' of his fourth amendment

34

1   claim," habeas relief is foreclosed on his claim that an unconstitutional search and
2   seizure occurred).  California provides criminal defendants with a full and fair
3   opportunity to litigate their Fourth Amendment claims through the motion to
4   suppress remedy provided by California Penal Code § 1538.5, which establishes a
5   specific mechanism for seeking the suppression of evidence on the ground that it
6   was obtained through unconstitutional means.  *See Gordon*, 895 F.2d at 613.

7          As described above, Petitioner filed the Section 1538.5 Motion in May 2007,
8   which sought to suppress evidence seized in California, Alabama, and South
9   Carolina and from bank accounts, and that motion was expanded over time to
10  encompass the additional requested relief of quashing/traversing the warrants at
11  issue.  The Section 1538.5 Motion had a remarkably extensive series of hearings
12  that spanned three years before it finally was resolved in full.  During those
13  numerous hearings, Petitioner had ample opportunities to raise any Fourth
14  Amendment concerns he had with respect to the search warrant(s) obtained by
15  Mannion at issue in Ground One.  That Petitioner may disagree with the state
16  court's factual and legal conclusions regarding his Section 1538.5 Motion, as it was
17  expanded over time, does not make his claim cognizable on habeas review.  *See*
18  *Ortiz-Sandoval*, 81 F.3d at 899; *see also Siripongs v. Calderon*, 35 F.3d 1308, 1321
19  (9th Cir. 1994) (petitioner's argument challenging the validity of his search "goes
20  not to the fullness and fairness of the opportunity to litigate the claim, but to the
21  correctness of the state court resolution, an issue which *Stone v. Powell* makes
22  irrelevant").  Because Petitioner had a fair opportunity to litigate any Fourth
23  Amendment issues he had in the trial court, the unexhausted Fourth Amendment
24  subclaim of Ground One is clearly barred on its face and should be denied pursuant
25  to Section 2254(b)(2).[15]

26
27  ---

[15]    In his Traverse (at 12-13), in an attempt to avoid the *Stone v. Powell* bar, Petitioner cites to
28  a motion to suppress he filed **after** he had been convicted, which asked the trial court to reconsider
    its prior rulings on the Section 1538.5 Motion.  [CT 6857-67.]  Petitioner asserts, without citation,

## II.    Ground Two:  Ineffective Assistance of Trial Counsel

By Ground Two, Petitioner contends that his trial counsel provided ineffective assistance by:  (1) failing to challenge the State's personal jurisdiction over Petitioner under the above Ground One theory at the initial appearance or thereafter, which forced Petitioner to represent himself; (2) on November 29, 2006, failing to see that the case was due for dismissal under California Penal Code § 859(b) and, instead, advising Petitioner to waive time for the preliminary hearing [*see* CT 77]; (3) failing to ascertain that the money laundering counts were "void as a matter of law"; (4) engaging in or failing to engage in some unspecified conduct related to California Penal Code § 786(b)(2); (5) failing to protect Petitioner's rights under California Penal Case § 861; and (6) failing to challenge an unspecified "out-of-state search warrant" prior to or during the preliminary hearing.  [Petition at 5; Pet. Mem. at 15-76.]  As discussed earlier, this claim is fully unexhausted.

### A. The Federal Law That Governs This Claim

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court clearly established the legal standards for an ineffective assistance of counsel claim.  Under the *Strickland* test, a petitioner must demonstrate that:  (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.  *Id.* at 687-88.  As both prongs of the *Strickland* test must be satisfied to establish a constitutional violation, the failure to satisfy either prong requires the denial of an ineffective assistance claim.  *See id.* at 687.

_____

that this post-conviction motion was "summarily dismissed" and that, therefore, the "full and fair hearing" requirement is unsatisfied.  Petitioner's argument is meritless.  Whether or not Petitioner received a hearing on a reconsideration motion brought post-conviction, after he already had received a full and fair hearing on his Section 1538.5 Motion, is irrelevant.  Moreover, Petitioner's Traverse argument is factually baseless.  The trial court set a December 10, 2010 hearing for the post-conviction motion [CT 6909], the hearing was continued to December 15, 2010 [Supp. RT 39], Petitioner was allowed to argue at the hearing, and the trial court denied the motion as previously litigated and untimely [Supp. CT 115; Supp. RT 65-67.]

1      The first prong of the *Strickland* test – deficient performance – requires a

2  showing that, in light of all the circumstances, counsel's performance was "outside

3  the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690;

4  *see also Richter*, 562 U.S. at 105 (the "question is whether an attorney's

5  representation amounted to incompetence under 'prevailing professional norms,' not

6  whether it deviated from best practices or most common custom"). Judicial scrutiny

7  of counsel's performance "must be highly deferential," and a reviewing court must

8  guard against the distorting effects of hindsight and evaluate the challenged conduct

9  from counsel's perspective at the time in issue. *Strickland*, 466 U.S. at 689. There

10  is a "strong presumption that counsel's conduct falls within the wide range of

11  reasonable professional assistance." *Id.*; *see also Pinholster*, 563 U.S. at 189.

12  "[F]ederal courts are to afford 'both the state court and the defense attorney the

13  benefit of the doubt.'" *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per*

14  *curiam*) (citation omitted). The burden to show deficient performance "rests

15  squarely on the" petitioner, and "the absence of evidence cannot overcome the

16  'strong presumption that counsel's conduct [fell] within the wide range of

17  reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013).

18      The second prong of the *Strickland* test – prejudice – requires establishing a

19  "reasonable probability that, but for counsel's unprofessional errors, the result of the

20  [trial] would have been different." *Strickland*, 466 U.S. at 694. A reasonable

21  probability is a probability "sufficient to undermine confidence in the outcome." *Id.*

22  "The likelihood of a different result must be substantial, not just conceivable."

23  *Richter*, 562 U.S. at 112. The court must consider the totality of the evidence before

24  the jury in determining whether a petitioner satisfied this standard. *Berghuis v.*

25  *Thompkins*, 560 U.S. 370, 389 (2010).

26

27  **B. Federal Habeas Relief Is Not Warranted**

28  Through Ground Two, Petitioner raises various subclaims of asserted

37

ineffective assistance by his trial counsel.  Each of them fails readily.

Subclaim (1) attacks counsel's failure to raise Petitioner's Ground One theory that the trial court lacked personal jurisdiction over him on the basis that the Criminal Complaint's allegation – that the charged crimes occurred within the County of Riverside – was false, forged, and perjurious given that (according to Petitioner) the crimes were committed in other Counties.  Petitioner notes that while his counsel filed a demurrer prior to the preliminary hearing, counsel did not raise this Ground One theory as to a lack of personal jurisdiction, nor did counsel raise his Ground One "liberty interest" contention.  Petitioner contends that counsel's failure to raise the Ground One personal jurisdiction/liberty interest arguments at the initial appearance forced Petitioner to represent himself.

As discussed earlier (*see* pp. 23-24), Petitioner's counsel made numerous attacks on the subject-matter jurisdiction of the trial court prior to the preliminary hearing.  Through a demurrer and motion to dismiss filed in December 2016, defense counsel argued that many of the counts involved crimes that did not occur in Riverside County and that, therefore, Riverside County did not have jurisdiction to hear the charges – essentially the same predicate for ground One that Petitioner asserts.  After the trial court disagreed, Petitioner's counsel made a motion under California Penal Code § 786(b)(2), again challenging Riverside County's jurisdiction to consider the charged crimes, and counsel successfully obtained the trial court's agreement that an evidentiary hearing was required, although the trial court ultimately denied the motion, because San Bernardino County and Los Angeles County had ceded jurisdiction to prosecute the crimes to Riverside County. Undeterred, in March 2007, Petitioner's counsel filed another demurrer, again arguing that the Riverside County trial court lacked jurisdiction over all but two of the counts alleged, because they were based on properties located, and transactions that occurred, in other counties.  Before that demurrer was heard, Petitioner opted to represent himself.  At the demurrer hearing, Petitioner raised his Ground One theory

1    about the falsity of the Criminal Complaint and attendant lack of personal

2    jurisdiction, and the trial court explained to him that because this argument was

3    based on extraneous matters, Petitioner would need to raise it in a California Penal

4    Code § 995 motion.  As discussed earlier, Petitioner did make such a motion raising

5    this theory, *i.e.*, the Section 995 Motion, which ultimately was denied after

6    substantial briefing and argument.

7          While the Court does not believe that *Strickland's* deficient performance

8    prong has been satisfied with respect to subclaim (1) given counsel's repeated

9    efforts to challenge the trial court's jurisdiction, the Court need not resolve this

10    question, because it is readily apparent that the claim fails on its face due to a lack of

11    *Strickland* prejudice.  Counsel's failure to raise Petitioner's personal jurisdiction

12    argument at the initial appearance or in the subsequent demurrers or Section

13    786(b)(2) motion did not prejudice Petitioner, because once he began representing

14    himself, he repeatedly raised the argument in court hearings and in his briefing,

15    including through his Section 995 Motion.  The fact that he was not successful does

16    not establish prejudice for Sixth Amendment purposes; Petitioner actually had the

17    opportunity to make this argument, but the trial court did not agree with him.

18    Counsel's failure to raise this argument at any stage did not actually deprive

19    Petitioner of the chance to make it and have the trial court consider it.  In any event,

20    for the reasons outlined in connection with Ground One, the personal

21    jurisdiction/liberty interest argument is meritless; it is meritless as argued by

22    Petitioner and it would have been meritless if it had been raised by counsel at the

23    initial appearance or later.  There can be no *Strickland* prejudice – indeed, nor any

24    *Strickland* deficient performance – based on counsel's failure to raise this meritless

25    argument.  *See Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to

26    raise a meritless argument does not constitute ineffective assistance."); *Rupe v.*

27    *Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take futile action can

28    never be deficient performance"); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994)

1  ("A lawyer's zeal on behalf of his client does not require him to" take meritless

2  action).

3         Subclaim (2) does not fare any better.  Any hearing that took place on

4  November 29, 2006 was not transcribed.  The record shows that Petitioner was

5  initially arraigned on November 13, 2006, and the preliminary hearing was set for

6  November 28, 2006.  [CT 70.]  At a November 27, 2006 continued felony settlement

7  conference, the preliminary hearing was re-set for November 29, 2006, with a

8  notation that "Last day is 11-30-06."  [CT 73.]  On November 29, 2006, an amended

9  complaint was filed, Petitioner was arraigned, the parties stipulated to hold the

10  preliminary hearing 12 days later (on December 11, 2006) and Petitioner waived

11  time for the hearing plus five court days.  [CT 77, 79-87.]

12         By subclaim (2), Petitioner apparently contends that, under California Penal

13  Code § 859b, his preliminary hearing was required to be held on an unspecified date

14  prior to November 29, 2006, and that because it was not, he was entitled to have his

15  case dismissed and his counsel performed deficiently by not obtaining such a

16  dismissal.  Section 859b does provide that a case may be dismissed if the

17  preliminary hearing is set for greater than ten court days after the arraignment, but

18  also provides that dismissal is not required if a defendant waives time and/or the

19  prosecution establishes good cause to continue beyond the ten-day period.  The

20  November 13, 27, and 29, 2006 hearings were not reported, and thus, the Court does

21  not know why the trial court set the preliminary hearing for the dates it did, but

22  assumes that there was a reason, including the likelihood – given the numerous

23  claims and defendants involved – that the prosecution had established good cause

24  for the dates selected.  Petitioner has not provided a sufficient record to prove that

25  counsel, in fact, performed deficiently and/or prejudice occurred.  As Petitioner

26  bears the burden to prove deficient performance, *Burt*, 571 U.S. at 22-23, he has not

27  overcome the "strong presumption that counsel's conduct" was reasonable, *id.*, and

28  thus, has not shown a Sixth Amendment violation for purposes of subclaim (2).

1    Subclaims (3) through (6) fail on their faces, because they are wholly

2    conclusory and bereft of any factual support or allegations.  These subclaims consist

3    of single vague and conclusory sentences, with no explanation about what it is that

4    counsel actually did or did not do and why it mattered, much less any record

5    citations supporting factual matter.  Subclaims (3) through (6) are simply too

6    speculative and conclusory to warrant federal habeas relief.  *See James v. Borg*, 24

7    F.3d 20, 26 (9th Cir. 1994) ("[c]onclusory allegations which are not supported by a

8    statement of specific facts do not warrant habeas relief"); *Boehme v. Maxwell*, 423

9    F.2d 1056, 1058 (9th Cir. 1970) ("conclusory statements are no substitute for proper

10   allegations of fact," and "[a]llegations of fact, rather than conclusions, are required"

11   in a state prisoner habeas petition); *see also Jones v. Gomez*, 66 F.3d 199, 205 (9th

12   Cir. 1995) (applying this rule to ineffective assistance claims).

13   　　　Ground Two fails, because on de novo review, it is perfectly clear that

14   Petitioner cannot prevail on any of its subclaims.  Accordingly, under Section

15   2254(b)(2), the claim must be denied.

16

17   **III.    Grounds Four And Five: The Failure Of The State And Federal**

18   **Courts To Grant Pre-Trial Habeas Or Other Writ Relief[16]**

19   　　　Grounds Four and Five both stem from Petitioner's lack of success on certain

20   of his state and federal writ petitions filed prior to his conviction.

21   　　　In Ground Four, Petitioner complains that his inability to obtain state and/or

22   federal writ relief forced him "to wait until after trial to establish he never should

23   have stood trial."  He alleges that this delay violated "legislatively enacted

24   commitment procedures" in some unexplained fashion and violated the Fourteenth

25   Amendment, also in some unexplained fashion.  [Petition at 6.]  In the portion of the

26

27   [16]    The Court will wait to address Ground Three until the end of this Report and

28   Recommendation, given that it challenges appellate counsel's failure to raise Grounds Four
     through Fifteen on direct appeal.

41

CSC Petition addressing Ground Four, Petitioner clarifies these allegations somewhat.  Petitioner notes that the California Court of Appeal denied seven pretrial writ petitions he filed[17] that, apparently, covered some of the same issues he had raised in the Section 995 Motions he brought.[18]  Petitioner notes that the seven writ petitions were denied through orders summarily denying them "on their face," which he labels an abuse of discretion because the state appellate court failed to explicitly address the merits of the arguments he had raised.  Petitioner asserts that the state court practice of issuing summary denial orders has caused California Penal Code § 995 to be "written off the books."  In addition, Petitioner asserts that when he sought federal habeas relief based on these same arguments through the three proceedings described earlier, the State wrongfully invoked the *Younger* abstention doctrine as an "affirmative defense" to keep the federal courts uninvolved and unable to resolve his pretrial claims until after his trial was completed.[19]

In sum, by Ground Four, Petitioner asserts that:  the California Court of Appeal "refused to address the merits of the [7] writs" he filed; and the State prevented the federal courts from hearing the same claims by "skillfully" invoking the *Younger* abstention doctrine.  Petitioner contends that these actions by the California Court of Appeal and Respondent violated due process, because the "State had the constitutional duty to resolve the merits rather than use dilatory procedural

---

[17]    Although Petitioner lists nine case proceedings as being at issue in Ground Four, the actual number is seven.  [CSC Petition, Supplemental Brief at 21.]  The first case he lists was his post-conviction direct appeal, not a pretrial writ proceeding, and the second case he lists was filed by his co-defendant Stepfon Macey, not by Petitioner.

[18]    As discussed earlier, Petitioner brought at least two motions under Section 995 and received extensive hearings on them.

[19]    Petitioner asserts that in his three federal habeas proceedings, the District Court found that his writ petitions were "meritorious" and issued "show cause orders," but was precluded from considering them when the State thereafter raised the *Younger* abstention doctrine as an "affirmative defense."  This is incorrect.  In all three cases, Respondent simply was directed to respond to the petitions filed; the District Court never issued any "order to show cause" and plainly never indicated any view about the merits of the claims raised by Petitioner.

1  defenses" yet forced Petitioner to wait until his direct appeal to litigate the merits of

2  the "pretrial commitment violations" he claims occurred, when they should have

3  been resolved before he was even tried.  [Supplemental Brief at 20-26.]

4         In Ground Five, Petitioner alleges that this Court is "judicially estopped"

5  from applying the provisions of Section 2254 to this case, because the District Court

6  applied the *Younger* abstention doctrine when he filed the above-noted three pretrial

7  federal habeas actions in 2008 and 2009.  Petitioner's theory is that, had the District

8  Court resolved those petitions on their merits prior to his trial, he would have

9  received *de novo* review of the claims alleged in them, so the deferential Section

10  2254(d) standard should not be applied to any of the claims he has pleaded in the

11  Petition, even if they were not alleged in the pretrial petitions.  [Petition at 6.]  In his

12  Traverse (at 21), Petitioner further argues that Respondent could have waived

13  raising the *Younger* abstention doctrine in the three federal habeas proceedings and

14  addressed the merits of the arguments Petitioner had raised, and that by having

15  chosen not to do so, Respondent may not take advantage of any of the AEDPA

16  provisions and the Court cannot do so as well.  Petitioner relies on *New Hampshire*

17  *v. Maine*, 532 U.S. 742 (2001), in which the Supreme Court found the State of New

18  Hampshire to be equitably barred, under the doctrine of judicial estoppel, from

19  taking a position as to a river boundary issue that was directly contrary to the

20  position it took in litigation decades earlier, which had resulted in a consent

21  judgment about the boundary.[20]

22

23  [20]    *In New Hampshire v. Maine*, the Supreme Court described the "judicial estoppel" doctrine
   as follows:  "where a party assumes a certain position in a legal proceeding, and succeeds in

24  maintaining that position, he may not thereafter, simply because his interests have changed,
   assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in

25  the position formerly taken by him"; and "[t]his rule, known as judicial estoppel, generally
   prevents a party from prevailing in one phase of a case on an argument and then relying on a

26  contradictory argument to prevail in another phase." 532 U.S. at 749 (citation and internal

27  quotation marks omitted).  The Supreme Court noted the three considerations that govern when
   deciding whether to apply the doctrine:  (1) "a party's later position must be 'clearly inconsistent'

28  with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that

1    Grounds Four and Five fail on their faces, for several reasons.

2    First, the premise on which Ground Four rests – that Petitioner was entitled to

3  received a written, reasoned decision from the California Court of Appeal

4  specifically addressing the merits of his claims and that the summary denials he

5  received instead somehow violated his federal constitutional rights – is flawed.  The

6  California Court of Appeal denied each of the cited seven writ petitions summarily

7  and without comment or citation to any procedural ground.  To the extent that

8  Petitioner believes due process was violated because he did not receive a written

9  reasoned decision on his writ petitions, his claim lacks merit.  The Court is not

10  aware of any authority supporting the notion that constitutional error occurs when a

11  petitioner receives a summary disposition of his claims in the state courts, and

12  Petitioner does not cite any.  That Petitioner may have asserted claims of

13  constitutional error in one or more of the seven pretrial writ petitions did not entitle

14  him to a reasoned decision under the Constitution.  The fact that Petitioner received

15  summary, rather than detailed, decisions on the issues he raised does not implicate

16  due process or any other federal constitutional concern.  There is no federal

17  constitutional prohibition that prevented the state courts from disposing of

18  Petitioner's pretrial claims in a summary fashion.  *See, e.g., Harris v. Rivera*, 454

19  U.S. 339, 344-45 (1981) (rejecting claim that state trial court erred in failing to

20  provide reasoned decision explaining apparent inconsistencies in verdicts in nonjury

21  criminal trials and observing that it is only the rare occasion, such as disciplinary

22  proceedings, in which due process requires a state tribunal to provide an explanation

23  of the reasons for its decision and that the "rule," instead, is otherwise; and holding

24  that federal court erred in directing state judge to provide an explanation for his

25

26  _____

27  party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding
would create 'the perception that either the first or the second court was misled'"; and (3)

28  "whether the party seeking to assert an inconsistent position would derive an unfair advantage or
impose an unfair detriment on the opposing party if not estopped."  *Id.* at 750-51.

decision, because "[f]ederal judges have no general supervisory power over state trial judges; they may not require the observance of any special procedures except when necessary to assure compliance with the dictates of the Federal Constitution").

Second, the fact that Respondent raised the *Younger* abstention doctrine when Petitioner sought federal pretrial habeas relief cannot possibly be said to have violated any federal constitutional right possessed by Petitioner.  Petitioner's characterization of this as an affirmative defense matter is erroneous.  The *Younger* abstention doctrine is a federal doctrine drive by concerns of federalism and comity, and a federal court can raise it *sua sponte*.  *San Remo Hotel v. City and County of San Francisco*, 145 F. 3d 1095, 1103 n.5 (9th Cir. 1998).  Had Respondent not invoked the doctrine, it is quite likely that the District Court would have abstained on its own in Petitioner's pretrial federal habeas actions given his pending state criminal cases.  Moreover, the doctrine contains exceptions that can preclude its application in the appropriate case.  These exceptions were addressed in the earlier three federal habeas proceedings and Petitioner simply did not persuade the District Court and the Ninth Circuit that the exceptions applied in his case.  Petitioner's lack of success in the District and Circuit Courts does not raise any due process or other federal constitutional concerns.

This Court need not get into the deeply held principles of federalism and comity that underly the *Younger* doctrine, but suffice it to say that federal constitutional error does not arise even if abstention precludes a state criminal defendant from obtaining pretrial federal habeas relief notwithstanding his assertion of constitutional error.  *See Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 619 (9th Cir. 2003) ("the constitutional dimension of the error claimed does not, by itself, constitute an exception to the application of *Younger* abstention").  Similarly, that Petitioner claims to have been raising claims asserting due process concerns as to the state procedures themselves does not render either raising or applying the *Younger* abstention doctrine to his pretrial petitions wrongful.  *See Baffert*, 332 F.3d

45

1    at 619 ("The Supreme Court has 'repeatedly rejected the argument that a

2    constitutional attack on state procedures themselves automatically vitiates the

3    adequacy of those procedures for purposes of the *Younger–Huffman* line of cases'"

4    [and] "'[T]he mere assertion of a substantial constitutional challenge to state action

5    will not alone compel the exercise of federal jurisdiction.'") (citations omitted).

6         Third, Petitioner cites no Supreme Court precedent or any other decision that

7    supports the proposition on which Ground Five rests, namely, that because a state

8    defendant was unable to obtain federal habeas relief with respect to his claims when

9    he raised them on a pretrial basis under 28 U.S.C. § 2241, AEDPA's statutory

10   requirements are rendered inapplicable and/or barred when he eventually re-raises

11   those claims or different claims through a post-conviction Section 2254 petition.

12   That is because no such authority exists.  The language of Section 2254(d) is

13   mandatory; it states that federal habeas relief "shall not be granted" unless the

14   standards of subsection (1) or subsection (2) are satisfied.  The AEDPA provisions

15   were enacted approximately a quarter of a century after the *Younger* abstention

16   doctrine was promulgated.  Nothing in the statute's provisions contemplates the sort

17   of exemption from this mandatory language that Petitioner urges, and no court has

18   so held.  Had Congress intended for Section 2254(d)'s review standard to be

19   inapplicable when a state prisoner seeks Section 2254 post-conviction habeas relief

20   following the earlier application of *Younger* abstention to his pretrial challenges,

21   Congress would have said so and carved out an exception to the statute's mandatory

22   language, but it plainly did not.

23        Petitioner's Ground Five judicial estoppel argument is patently frivolous.

24   There is nothing inconsistent between applying *Younger* abstention to a pretrial

25   federal habeas petition and later applying the mandatory Section 2254(d) review

26   standard when the same or different claims are raised, post-conviction, through a

27   Section 2254 petition.  Critically, Respondent has not taken *any* inconsistent

28   position that could implicate the judicial estoppel rule and Petitioner does not

1    identify one.  There also is nothing inconsistent about the District Court having

2    abstained from hearing Petitioner's habeas claims while his state criminal case was

3    pending and now applying the Section 2254(d) standard of review to his post-

4    conviction habeas petition as it is required to do.  There simply is no inconsistency

5    between the federalism and comity concerns that required *Younger* abstention back

6    in 2008 and 2009 – before Petitioner had been tried and convicted – and those that

7    mandate adherence to the statutorily-imposed AEDPA requirements following his

8    conviction.    Petitioner had no federal constitutional right to avoid application of the

9    *Younger* abstention doctrine when he raised his claims prior to trial, and the Ninth

10   Circuit found that the doctrine properly had been applied.  Now that Petitioner has

11   been convicted and is raising his claims – many of which were not included in his

12   three pretrial federal habeas petitions – on a post-conviction basis through a Section

13   2254 petition, the Section 2254(d) standard of review must be applied unless and

14   until Petitioner surmounts the (d)(1) and/or (d)(2) requirements, at which time he

15   then would receive de novo review of his claims.

16        Grounds Four and Five are legally baseless.  As these claims do not set forth

17   any basis for setting Petitioner's 2010 conviction aside, federal habeas relief is

18   foreclosed.

19

20        **IV.    Ground Six:  Counts 31, 32, 44, And 45**

21        On direct appeal, the California Court of Appeal vacated the convictions on

22   Counts 18, 19, 20, 21, and 33 after the State conceded that the personal checks

23   involved were not "monetary instruments" within the meaning of the state law

24   money laundering crimes charged under California Penal Code § 186.10(a).  [*See*

25   LD 36 at 8-10.]  By Ground Six, Petitioner contends that his Count 31 and 32

26   convictions under Section 186.10(a) also should have been reversed for the same

27

28

1     reason.[21]  In addition, Petitioner complains that the jury instructions given as to

2     Counts 31, 32, 44, and 45 were deficient for the same reason raised by his appellate

3     counsel in the Supplemental Opening Brief at p. 9, which argued that reversal of the

4     convictions for Counts 18, 29, 20, and 33 was required because the instruction given

5     on the charged crime failed to omit personal checks from the definition of monetary

6     instrument.  Finally, Petitioner raises a "merger" argument based on a Supreme

7     Court decision involving a federal criminal statute.

8         Petitioner's attacks on the above money laundering convictions – as raised

9     here and in the state high court through the CSC Petition – are based solely on

10    asserted errors of state law.  Petitioner does not mention, reference, or discuss any

11    alleged federal constitutional error in connection with these convictions.  Rather, his

12    argument for habeas relief is:  as to Counts 31 and 32, the convictions should have

13    been overturned because "personal checks" are not "monetary instruments" under

14    California law, which was the state law error argued as to his four other Section

15    186.10(a) convictions and the reason they were reversed; and as to Counts 31, 32,

16    44 and 45, the jury instruction failed to omit personal checks from the definition of

17    monetary instrument, as required by California law.  [*See* Supplemental Brief at 10;

18    Traverse at 22-23.]  This state law error argument is not cognizable.

19         As a general rule, federal habeas courts may not issue a writ of habeas corpus

20    on the basis of an error in applying state law.  *Estelle*, 502 U.S. at 67-68 ("it is not

21    the province of a federal habeas court to reexamine state-court determinations on

22    state-law questions"); *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per

23    curiam) ("'We have stated many times that federal habeas corpus relief does not lie

24    for errors of state law.'") (citation omitted).  "[I]t is only noncompliance with

25

26    _____

27 [21]      As alleged in Ground Six [CSC Habeas Petition, Supplemental Brief at 10], Petitioner also
included Count 21 in this challenge, but he omitted it from his Traverse argument, presumably

28 because Count 21 had been reversed on direct appeal, and thus, there is no reason to seek federal
habeas relief as to this Count.

*federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts," because "[t]he habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam) (citing 28 U.S.C. § 2254(a)). "[A]lleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings, and a Section 2254 petition may not transform a state law issue into a federal one simply by labeling it a due process violation. *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997).

Here, Petitioner does not even label the asserted state court errors as to Counts 31, 32, 44, and 45 as any type of federal constitutional error, much less make any arguments that can be construed liberally to assert federal error.  He also did not do so in the California Supreme Court.  Petitioner's arguments in Ground Six are grounded solely as claims of state law error, and they are not cognizable in federal habeas review.  *See Little v. Crawford*, 449 F.3d 1075, 1083 n.6 (9th Cir. 2006) ("'We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.'") (citation omitted)

Petitioner's "merger" argument does not alter than conclusion.  The argument itself is fairly incomprehensible, but the one thing that is clear is that Petitioner bases it on *United States v. Santos*, 553 U.S. 507 (2008).  *Santos* involved a federal conviction for gambling, conspiracy, and money laundering.  The Supreme Court affirmed the reversal of the money laundering conviction, because the federal criminal statute's use of the term "proceeds" was ambiguous as to whether it referred to profits or receipts; thus, the rule of lenity was applicable and the statute had to be interpreted in the defendant's favor and "proceeds" meant only profits.  Under the facts at hand, neither defendant had violated the money laundering statute, because their payments and receipt of payments did not involve the "profits"

1   of the illegal lottery scheme. *Id.* at 512-14, 524.  In passing, the Court noted the

2   possible "merger problem" that could exist if the statute were construed to include

3   receipts, because illegal lotteries tend to pay winners with receipts from the scheme,

4   and thus, the statute criminalizing them would "merge" with the money laundering

5   statute, and further noted that this can be an issue in other crimes in which someone

6   pays for the costs of a crime with its proceeds. *Id.* at 516.  Petitioner has not shown

7   how this passing discussion is applicable to Counts 31, 32, 44, and 45.  More

8   importantly for this Court's federal habeas review, *Santos* did not involve any

9   federal constitutional issue or claimed federal constitutional violation and related

10  strictly to the construction of the federal criminal statute in issue; nothing in the

11  decision turned on or implicated federal constitutional concerns.  Even if

12  Petitioner's "merger" argument somehow properly invokes *Santos*, it does not raise

13  any federal constitutional issue that can be considered here.

14       Ground Six is not cognizable on federal habeas review.  Accordingly, the

15  claim should be denied.

16

17  **V.     Ground Seven:  Sufficiency Of The Evidence**

18       Ground Seven is based on "insufficiency of the evidence."  [Petition at 7;

19  Supplemental Brief at 13.]  In his seventh claim, Petitioner contends that certain of

20  his convictions – for  elder abuse (Counts 9 and 26), for grand theft (Counts 11, 28,

21  36, 47, and 48), and for identity theft (Counts 2, 3, 5, 6, 7, 8, 13, 14, 15, 16, 23, 24,

22  25, 30, and 35) – are "devoid of substantial evidence in violation of the Fourteenth

23  Amendment."  [Petition at 7.]  While Petitioner notes the trial court's failures to

24  grant both his California Penal Code § 1181.1 motion for a judgment of acquittal

25  made at the close of the prosecution's case and his postconviction motion for a new

26  trial [*see* Supplemental Brief at 13-14; Traverse at 24-25], his Ground Seven

27  arguments, construed liberally for habeas purposes, reasonably must be read as

28  asserting that due process was violated, because there was insufficient evidence to

1    support the foregoing convictions, as follows:

2         With respect to the *elder abuse convictions*, Petitioner contends that the only

3    evidence that supported the conviction was hearsay testimony by Fannie Middleton,

4    the wife of victim C.L. Middleton.  Petitioner asserts that Fannie Middleton's

5    testimony did not support his conviction, because:  (1) she was an accomplice in the

6    crime, who embezzled her husband's property with the aid of her niece; and (2) her

7    testimony was "impermissible hearsay."  Petitioner also asserts that Count 26 must

8    be reversed, because elder abuse is "a continuing course of conduct."  Finally,

9    Petitioner asserts that there is no substantial evidence that supports either Count 9 or

10   Count 26.  [Supplemental Petition at 15-16.]

11        With respect to the *grand theft convictions*, Petitioner asserts that, as to

12   Counts 11, 28, and 48, a title company paid off the loan and the victims were

13   reimbursed.  As to Count 47, Petitioner asserts that the evidence of how $430,000

14   was taken from Stewart Title Company was not clearly alleged in the parties'

15   appellate briefing.  As to Counts 11, 28, 36, and 48, Petitioner asserts that, based on

16   the preliminary hearing evidence, the intended victims were title companies, not the

17   individual victims pleaded in the Information.  As to all five counts, Petitioner

18   asserts that:  instructional error occurred; no substantial evidence existed to support

19   the theory of theft in which the jury was instructed; the prosecution proffered only

20   accomplice testimony to support the charges; and the record is devoid of evidence to

21   support finding that there was a June 2006 theft of Stewart Title Company funds.

22   [Supplemental Brief at 16-18.]

23        With respect to the *identity theft convictions*, Petitioner asserts that under the

24   statute for the crime, there can be only one felony charge per victim, not multiple

25   charges.  Petitioner alludes, without explanation, to an unspecified challenge he

26   made in one of his Section 995 motions.  Petitioner contends that as to Counts 5, 15,

27   and 24, at the preliminary hearing, a witness testified that he "made up" the driver's

28   license number set forth for one of the victims without consulting Petitioner, and

1    Petitioner asserts that he had not knowledge of this yet "was held to answer" on

2    these Counts following the preliminary hearing.  As to Count 2, Petitioner notes that

3    Barbara Karr testified and said she has a middle name, yet the "Barbara Karr" listed

4    on the underlying documents did not, and "there was no attempt" to match those

5    documents to the testifying witness.  As to Count 30, Petitioner alleges that a

6    witness testified that the teller would put the victim's ID number on the back of the

7    check and that this somehow absolves him if guilt with respect to this Count.[22]

8

9         **A.  The Clearly Established Federal Law That Governs This Claim.**

10        The Fourteenth Amendment's Due Process Clause guarantees that a criminal

11   defendant may be convicted only "upon proof beyond a reasonable doubt of every

12   fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397

13   U.S. 358, 364 (1970).  The federal standard for determining the sufficiency of the

14   evidence to support a jury finding is set forth in *Jackson v. Virginia*, 443 U.S. 307

15

16   [22]    In his Traverse (at 25-26), Petitioner asserts various new theories in support of Ground
     Seven, including that:  California Penal Code § 1118.1 afforded him a liberty interest in having his
17   motion for judgment of acquittal granted, which the trial court violated by failing to adhere to state
18   law rules regarding how the evidence was to be viewed; and the state court made an unidentified
     unreasonable determination of fact under Section 2254(d)(2) with respect to Counts 30 and 36.
19   These claims were not included in his Supplemental Brief, the means by which Ground Seven was
     exhausted, nor were they included in the Petition, as Petitioner concedes.
20
           The above belatedly-raised claims were not made in the state courts and are unexhausted.
21   28 U.S.C. § 2254(b).  Moreover, the assertion of new and unexhausted claims in the Traverse is
22   improper.  *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (finding that district
     court properly declined to address a claim raised in the traverse and holding that: "A Traverse is
23   not the proper pleading to raise additional grounds for relief.  In order for the State to be properly
     advised of additional claims, they should be presented in an amended petition or, as ordered in this
24   case, in a statement of additional grounds. Then the State can answer and the action can
25   proceed."); *see also Lopez v. Dexter*, 375 Fed. Appx. 724, at *1 (9th Cir. April 13, 2010) (district
     court "appropriately rejected" claim that was not alleged in the petition on the basis that it
26   "improperly surfaced for the first time" in the petitioner's traverse); *Moore v. Chrones*, 687 F.
     Supp. 2d 1005, 1032 n.17 (C.D. Cal. 2010) ("it is improper to attempt to change the substance of a
27   claim through a Traverse and to assert . . . a new claim distinct from that alleged in the original
     petition").  Accordingly, the Court will not address the above-noted belatedly-raised and
28   unexhausted allegations in the Traverse with respect to Ground Seven.

(1979).  Under *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original); *see also Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (*per curiam*) ("the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality"); *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*) (a habeas court "may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury")' *Drayden v. White*, 232 F.3d 704, 709-10 (9th Cir. 2000) (explaining that the evidence may be sufficient to support a jury's finding even if it does not "compel" that finding).

When reviewing the record, the Court "must consider all of the evidence admitted by the trial court, regardless whether that evidence was admitted erroneously." *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (*per curiam*) (quotation marks omitted).  "'Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted).  The Court "must respect the province of the jury to ascertain the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." *United States v. Kilby*, 443 F.3d 1135, 1140 (9th Cir. 2006) (citation omitted).  The reviewing court does not decide whether it would have found the trial evidence sufficient or scrutinize "the reasoning process actually used by the fact-finder." *Jackson*, 443 U.S. at 318-19 & n.13 (noting that a reviewing court does not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt").  The *Jackson* standard also does not require that the prosecutor affirmatively "'rule out every hypothesis except that of guilt.'" *Wright v. West*, 505 U.S. 207, 296 (1992) (citation omitted).  When the factual record supports conflicting inferences, the federal court

1    must presume – even if it does not affirmatively appear on the record – that the trier

2    of fact resolved any such conflicts in favor of the prosecution and defer to that

3    resolution. *Jackson*, 443 U.S. at 326. "*Jackson* leaves juries broad discretion in

4    deciding what inferences to draw from the evidence presented at trial," and it

5    requires only that they draw "'reasonable inferences from basic facts to ultimate

6    facts.'" *Coleman*, 566 U.S. at 655 (citation omitted).

7         When, as here, a case is governed by Section 2254(d)(1), the federal habeas

8    court must "apply the standards of *Jackson* with an additional layer of deference."

9    *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005); *see also Johnson*, 566 U.S. at

10    651 ("We have made clear that *Jackson* claims face a high bar in federal habeas

11    proceedings because they are subject to two layers of judicial deference.") "An

12    additional layer of deference is added to [the *Jackson*] standard by 28 U.S.C. §

13    2254(d), which obliges [a petitioner] to demonstrate that the state court's

14    adjudication entailed an unreasonable application of ... *Jackson*." *Briceno v.*

15    *Scribner*, 555 F.3d 1069, 1078 (9th Cir. 2009); *see also Johnson*, 566 U.S. at 651.

16    "[A] federal court may not overturn a state court decision rejecting a sufficiency of

17    the evidence challenge simply because the federal court disagrees with the state

18    court. The federal court instead may do so only if the state court decision was

19    'objectively unreasonable.'" *Cavazos*, 565 U.S. at 2 (citation omitted); *see also*

20    *Boyer v. Belleque*, 659 F.3d 957, 965 (9th Cir. 2011) ("Stated another way, to grant

21    relief, [a federal court] must conclude that the state court's determination that a

22    rational jury could have found that there was sufficient evidence of guilt, *i.e.* that

23    each required element was proven beyond a reasonable doubt, was objectively

24    unreasonable.").

25

26         **B.  Federal Habeas Relief Is Not Warranted As To The Elder Abuse**

27              **Convictions.**

28    The Counts 9 and 26 convictions for elder abuse stemmed from Petitioner's

54

1   actions in connection with loans related to two Los Angeles properties owned by
2   C.L. Middleton and Fannie Middleton ("Fannie"), one at 866 East 46th Street (Count
3   9) and the other at 925 East 43rd Street (Count 26).  By Counts 9 and 26, Petitioner
4   was convicted of violations of California Penal Code § 368(d), that is, of being a
5   person who was not a caretaker of C.L. Middleton and who committed an
6   embezzlement, theft, forgery, fraud, or identity theft offense with respect to the
7   property or personal identifying information of Middleton, an elder or dependent
8   adult, and who knew or reasonably should have known that the victim was an elder
9   or dependent adult.  [*See* CT 6089, 6095.]

10       As described by the California Court of Appeal, Petitioner's mother and
11  another man posed as C.L. and Fannie Middleton to obtain loans against both
12  properties.  The proceeds of these loans were not provided to the Middletons but
13  instead were wired to Fidelity Escrow accounts (the accounts set up by Petitioner as
14  "Larry Perry" doing business as Fidelity Escrow) and then disbursed to Petitioner
15  and his co-defendants directly and to businesses owned and operated by Petitioner
16  and his co-defendants, as well as to Fannie Holloway, Fannie's niece.

17       The evidence establishing the above is not at issue in Ground Seven.  Rather,
18  Petitioner's principal complaint about his Count 9 and Count 26 elder abuse
19  convictions is his assertion that the convictions for these two Counts rest solely on
20  the testimony of Fannie, victim C.L. Middleton's wife.[23]  Petitioner contends that
21  Fannie's testimony was not sufficient to support the convictions, asserting that her
22  testimony contained inadmissible hearsay and that she was an accomplice to his
23  crimes.  Petitioner's allegations are wholly unsupported; he fails to cite to any
24  portion of Fannie's testimony, much less any testimony that he believes rested on
25  improperly-allowed hearsay, and he fails to cite to any evidence that she was an
26  "accomplice" in the crimes with which he was charged.  For purposes of Ground

27

28  [23]   Mr. Middleton had died by the time of trial.  [RT 3971-72.]

1 Seven's insufficiency of the evidence claim, it is Petitioner's burden here to identify
2 any deficiencies in the evidence presented against him; the Court cannot scour the
3 record to find them for him.

4       That said, it is plain that this portion of Ground Seven fails regardless of
5 Petitioner's failure to identify the matters of which he complains.  Even if the Court
6 were to assume that Fannie's testimony contained hearsay that was technically
7 inadmissible, this is of no moment to the Court's federal habeas review, because as
8 noted earlier, on a sufficiency of the evidence challenge, the Court is required to
9 consider all of the evidence admitted by the trial court, even if some of the evidence
10 was admitted erroneously.  *McDaniel*, 558 U.S. at 131.  And while the Court is
11 dubious of Petitioner's assertion that the *only* evidence supporting Counts 9 and 26
12 was Fannie's testimony, even if this were so, it is well-settled that the testimony of a
13 single witness is sufficient to support a conviction under the *Jackson* standard.  *See*
14 *United States v. McClendon*, 782 F.2d 785, 790 (9th Cir. 1986); *United States v.*
15 *Larios*, 640 F.2d 938, 940 (9th Cir. 1981); *see also United States v. Foster*, 243 Fed.
16 App'x 315, 316 (9th Cir. 2007) (testimony of one witness sufficient, and "the
17 resolution of any question as to his credibility is properly entrusted to the jury")
18 (citations, internal quotations and brackets omitted).  The same is true under
19 California law.  *See, e.g., People v. Jackson*, 183 Cal. App. 2d 562, 568 (1960) ("the
20 testimony of one witness is sufficient to support a verdict if such testimony is not
21 inherently incredible").  The jury was instructed consistently.  (*See* CT 6719, in
22 which the jury was instructed:  "Except for the testimony of [co-defendant] Anthony
23 Devaughn regarding [Petitioner's] involvement, which requires corroborating
24 evidence, the testimony of only one witness can prove any fact."]

25       In short, that Fannie's testimony in support of Counts 9 and 26 may have
26 contained hearsay and allegedly may have been the only evidence establishing
27 Petitioner's guilt is not a basis for finding, under *Jackson*, that the evidence
28 supporting the convictions on these two counts was constitutionally insufficient or

that the state court's decision was objectively unreasonable. Petitioner attempts to get around these solidly established rules by asserting – without support to citation to the record – that Fannie was an accomplice. It is true that accomplice testimony adverse to a co-perpetrator requires corroboration under California law. *See, e.g., People v. Szeto*, 29 Cal. 3d 21, 27 (1981). The Court, however, has no basis for finding that Fannie actually *was* an accomplice within the meaning of this evidentiary rule and that, therefore, her testimony required corroboration. Petitioner certainly has not shown so – he proffers only his single conclusory allegation – and the jury was not so instructed, instead having been told that the only accomplice was Anthony Devaughn and that only his testimony required corroboration.[24] Tellingly, in his closing argument, Petitioner never described Fannie as an accomplice or hinted at the same. [*See* RT 5698-5721, *passim*, and 5707-07, 5713, Petitioner's sole references to the elder abuse counts and Fannie.][25] Petitioner's solitary and barebones "accomplice" assertion in Ground Seven falls woefully short of stating any tenable basis for questioning the sufficiency of the evidence that supports Counts 9 and 26 based on the theory that Fannie's testimony could not support his convictions.

---

[24]    Petitioner correctly notes that the trial court gave the general accomplice instruction, but the jury was never told that Fannie was an accomplice, whether by the trial court or by the argument of either side.

[25]    Fannie was 73 years old when she testified at trial. [RT 4149.] She testified that: her husband took care of all financial matters; she did not know Petitioner or any of the co-defendants or cohorts; and she never authorized "Larry Perry" or Fidelity Escrow or anyone else to use her name to obtain take out a loan. [RT 4156-60, 4162-63.] Fannie's niece, Fannie Holloway, testified that: in 2005, she asked Petitioner to come to her aunt's house about obtaining a loan for needed repairs; she was not aware that any loan was funded; the money she received from Petitioner was a loan he made to her at her request; she dated Petitioner in 1990-91 and "hooked up" with him in 2004; she did not believe that Fannie knew that Petitioner had obtained a loan on her behalf; she was not aware that Petitioner was going to have imposters stand in for the Middletons to obtain a loan; Petitioner told her Larry Perry was his business partner; and she was not a part of any conspiracy to obtain a loan without Mr. Middleton knowing about it. [RT 4754-48; 4798-4805.]

1    The same is true as to Petitioner's contention that "[t]here is no substantial

2  evidence, to support Counts (9) and (26) in the record, creating a federal due process

3  concern." [Supplemental Brief at 16.] It is Petitioner's burden to show what

4  elements of the elder abuse crime were not supported by the evidence presented.

5  His actual argument seems to be that Fannie's testimony was not "substantial" for

6  the above-noted reasons and therefore was not "credible." [*See id.*] But it is a

7  bedrock principle of *Jackson* analysis that the determination of a witness's

8  credibility generally is a question for the jury, and that "[a] jury's credibility

9  determinations are . . . entitled to near-total deference under *Jackson*." *Bruce v.*

10  *Terhune*, 376 F.3d 950, 957 (9th Cir. 2004); *see also Schlup v. Delo*, 513 U.S. 298,

11  330 (1995) ("under *Jackson*, the assessment of the credibility of witnesses is

12  generally beyond the scope of review"); *Walters*, 45 F.3d at 1358 (the reviewing

13  court "must respect the province of the jury to determine the credibility of witnesses,

14  resolve evidentiary conflicts, and draw reasonable inferences from proven facts by

15  assuming that the jury resolved all conflicts in a manner that supports the verdict").

16  Any discrepancies in or issues with respect to Fannie's testimony were factors for

17  the jury to consider. *See Jones v. Wood*, 207 F.3d 557, 564 (9th Cir. 2000) (noting,

18  in the context of performing *Jackson* review, that determining witness credibility is

19  a "key question for a jury"). The jurors at Petitioner's trial were instructed in detail

20  about the factors they should consider in deciding whether a witness's testimony

21  was credible. [*See* CT 6715-16.] Having been so instructed, the jury apparently

22  found Fannie's testimony to be credible, given the guilty verdicts on Counts 9 and

23  26. Given Petitioner's utter failure to identify what about her testimony should not

24  have been believed, it is not for this Court to subvert the jury's verdicts.

25    Finally, the Court notes Petitioner's assertion that Count 26 must be reversed

26  because "elder abuse is a continuing course of conduct." [Supplemental Brief at 16,

27  citing two California decision.] It is unclear what sort of constitutional error

28  Petitioner means to raise by this solitary assertion. While California law provides

that the crime of elder abuse may be shown by acts constituting a continuing course of conduct as a general matter,[26] the crime of which Petitioner was convicted – California Penal Code § 368(d) – does not require such and may be committed by a single act.  *See, e.g., People v. Catley*, 148 Cal. App. 4th 500 (2007) (single check drawn on elder adult's bank account).  To the extent that, instead, Petitioner believes he could have been charged with only a single count of elder abuse rather than two, he plainly is mistaken.  Count 9 and Count 26 involve two different loan transactions and acts separated by time and place and involving different players.  Whether or not these matters could have been treated as an ongoing course of conduct and charged as a single count instead of two is of no concern to the federal due process concerns at play in a *Jackson* sufficiency of the evidence analysis.

Petitioner's sufficiency of the evidence challenge to Counts 9 and 26 fails readily, and the state high court's rejection of it was not objectively unreasonable legally or factually.

### C.  Federal Habeas Relief Is Not Warranted As To The Grand Theft Convictions.

Petitioner asserts that as to three of his grand theft conviction (Counts 11, 28, and 48), the victims of the theft identified in the Second Amended Information were paid off by a title company.  He also asserts – without support[27] – that as to Counts 11, 28, 36, and 48, the actual intended victims of his theft crimes were the title companies.  Petitioner appears to believe that his professed desire to cause title companies to incur financial harm somehow renders these four grand theft

---

[26]     *See, e.g., People v. Rae*, 102 Cal. App. 4th 116, 123 (2004).

[27]     Petitioner alludes only, and vaguely, to the preliminary hearing.  He provides no citation for his assertion and the Court's review finds nothing that supports it.  In any event, a sufficiency of the evidence claim is concerned only with the evidence at trial that was presented to the jury, not with evidence presented at earlier nontrial hearings that were not a part of the trial record.

1  convictions null and void.  He is mistaken.  That the victims of a theft ultimately end

2  up getting reimbursed does not *nunc pro tunc* make conduct that constituted theft

3  when it occurred as if it never happened.  A grand theft is committed when money

4  or personal property valued in excess of $950.00 is "taken."  California Penal Code

5  § 487(a); *see also People v. Creath*, 31 Cal. App. 4th 312, 318 (1995) ("Theft is the

6  unlawful taking of property of another.").  Here, money was "taken" from the

7  victims, even if any financial harm from that taking was rectified subsequently

8  through a title company payment.  That the victims were reimbursed does not after-

9  the-fact nullify the fact that a taking occurred, as committed by Petitioner.

10      The grand theft crimes of grand theft by false pretenses or theft by trick,[28]

11  under California law, do not require that the "taking" be permanent in nature.  And

12  even if, as he asserts, Petitioner intended that the title companies would bear the

13  ultimate financial brunt of his crimes, this does not mean he did not commit the

14  crimes.  *See, e.g., People v. Brady*, 275 Cal. App. 2d 984, 994-95 (1969) (flatly

15  rejecting the defendant's argument that "there was no proof of a completed crime

16  [grand theft by false pretenses] because the victim did not suffer a financial loss,"

17  and opining:  "If the victim is induced to part with money or property in exchange

18  for other property fraudulently misrepresented, the crime is committed; it is not a

19  defense that no permanent loss occurred; the victim is defrauded if he did not get

20  what he bargained for, even though he may not have suffered a net financial loss;

21  the victim is defrauded even though he may eventually recover the money or

22  property taken from him . . ., and subsequent restoration, restitution or repayment is

23  no defense. . . ."; and "The crime of theft by false pretenses is complete when, by

24  means of such false pretenses, the fraud intended is consummated by obtaining

25  possession of the property sought; the victim is merely a witness whose ultimate

26  financial gain or loss, in the circumstances, is immaterial; financial loss is not a

27  ─────────────────────

28  [28]     As discussed *infra* in Section XII, these are the theories of grand theft on which the grand theft counts proceeded and were presented to the jury.

necessary element of the crime.") (citations omitted); *People v. Whiteside*, 58 Cal. App. 33, 41 (1922) ("the proof of the offense is complete when it is shown that the prosecuting witness is induced to part with his money or property in reliance upon the fraudulent pretenses of the accused"); *see also People v. Traster*, 111 Cal. App. 4th 1377, 1390 n.37 (2003) (finding above-noted *Brady* observations equally applicable when evidence showed crime was theft by trick); 2 WITKIN CAL. CRIM. LAW 4TH – PROPERTY § 68 (2020) (for the crime of grand theft by false pretenses, "the victim is defrauded even though he or she may eventually recover the money or property taken or otherwise be made whole").

Petitioner next asserts that, with respect to Count 47, his appellate counsel's opening brief did not set forth the facts showing "how" the $430,000 he took actually was taken from alleged victim Stewart Title Company, noting that Respondent, in his appellate brief, quipped that the evidence against Petitioner is "mind-numbing" and difficult to determine from the oral testimony. That the parties, on direct appeal, did not identify the specific evidence that supports Count 47 is wholly irrelevant, given that there was not claim raised on direct appeal challenging the sufficiency of the evidence with respect to the Count 47 conviction. Petitioner's failure here and in the California Supreme Court to identify *any* asserted insufficiency in the evidence as to this Count is not excused by the omission of any such argument in his direct appeal briefing, in which no such issue was raised. This portion of Ground Seven is frivolous and simply does not raise any federal due process concern.

Petitioner next complains that, with respect to all five Counts, the trial court failed to instruct the jury regarding the crime of embezzlement. This is the same claim that Petitioner has raised as a part of Ground Fourteen, and the Court addresses it (and rejects it) in Section X11, *infra*. In any event, this claim of purported instructional error does not state any tenable theory of a due process violation for purposes of a sufficiency of the evidence challenge.

Petitioner next asserts that the prosecutor "offered only accomplice testimony" at trial to support the grand theft convictions. This allegation is palpably false, as even the most cursory review of the Reporter's Transcript readily reveals. The prosecution presented numerous witnesses, including, *inter alia*, employees of the property management company that leased Petitioner office space for "Fidelity Escrow," mortgage lenders, real estate agents, bank employees, victims, etc. – none of whom possibly could be viewed as accomplices. This argument is specious.

The remainder of Petitioner's challenge to his grand theft convictions suffers from the same defect that plagues his elder abuse conviction challenge. Petitioner asserts, without explanation or citation, that there "is no substantial evidence to support the theory of theft the jury was instructed on" and that "the record is devoid of evidence" to support Count 47. These two conclusory allegations, bereft of any explanation of why the evidence was insufficient (such as what elements were not proven), do not come close to raising any federal due process concern.

The state high court's rejection of Petitioner's sufficiency of the evidence challenge to his five grand theft convictions was not objectively unreasonable legally or factually.

## D. Federal Habeas Relief Is Not Warranted As To The Identity Theft Convictions.

Petitioner was convicted of numerous violations of California Penal Code § 530.5(a) for willfully and unlawfully obtaining and using personal identifying information of specified victims and using such information to obtain credits, goods, and services in the names of the victims without their consent. Petitioner's first challenge to 15 of his identity theft convictions rests on the premise that regardless of how many times and on how many different occasions he used a victim's personal information, he could only be charged with one felony count of identity theft as to that victim and any additional charges were required to be brought as

1    misdemeanors. As the primary support for this proposition, Petitioner cites

2    California Penal Code § "530.5(b)(3)" – a statute that does not exist now and did not

3    exist at the time Petitioner was charged and convicted. Given that Petitioner relies

4    on a non-existent statute for his argument, the Court cannot properly address it but,

5    at a minimum, a made-up statutory provision cannot support federal habeas relief.

6          As further purported support for his contention that he could only be

7    prosecuted for a single felony charge of identity theft per victim, Petitioner

8    represents that the jury instruction given for the crime (CALCRIM No. 2040)

9    advised the jury that the crime consisted of only two elements. This is untrue. The

10   instruction given told the jury that they had to find *three* elements to convict: (1)

11   that Petitioner willfully obtained someone else's personal identifying information;

12   (2) that he willfully used that information for an unlawful purpose; and (3) that he

13   used the information without the consent of the person whose identifying

14   information he used. [CT 6736-37; RT 5527.] Petitioner's misstatement aside, he

15   concedes that he used his victims' personal identifying information "more than

16   once" but asserts that he obtained the information only "'one' time per alleged

17   victim." [Supplemental Brief at 18.] Even if this is true, it does not establish any

18   due process error in the multiple charges brought against him for the multiple times

19   he used his victims' personal identifying information, because Petitioner's

20   contention is dead wrong under California law. *See People v. Mitchell*, 164 Cal.

21   App. 4th 442, 455-56 (2008) (rejecting the defendant's argument that his use of the

22   victim's driver's license on two different occasions could be charged as only one

23   Section 530.5(a) violation; noting that "it is the use of the identifying information

24   for an unlawful purpose that completes the crime and each separate use constitutes a

25   new crime" and "a single theft of personal identifying information and use of that

26   information to obtain property will not immunize the thief from prosecution for

27   subsequent uses of the information to obtain other property"; and holding that

28   "Section 530.5, subdivision (a), is committed each time an offender *uses* personal

1    identifying information for any unlawful purpose").

2          In any event, Petitioner's apparent contention that he could only be charged

3    with one felony count of identity theft per victim does not constitute a viable theory

4    to support a sufficiency of the evidence claim under clearly established federal law.

5    At most, and erroneously, he asserts some sort of state law charging error.  He has

6    not shown any due process error under *Jackson*.

7          Petitioner next asserts that he has an "additional claim regarding the § 530.5

8    challenged in the § 995 proceedings, that survives the 'prejudice burden' set out in

9    People vs. Pom[p]a-Ortiz (1980) 27, Cal. 3d 519."  Petitioner does not identify any

10   such "additional claim" alleged in his Section 995 Motion proceedings, and given

11   his extensive filings and the numerous hearings he received over two years (as

12   described earlier), as well as the length of the related record, it would be unduly

13   burdensome if not impossible for the Court to try to figure out what he is talking

14   about here through this cryptic reference.  Petitioner's invocation of the *Pompa-*

15   *Ortiz* decision is puzzling, given that it related to the issue of a defendant's right to

16   have a public preliminary hearing and has absolutely nothing to so with sufficiency

17   of the evidence challenges and the California Penal Code § 530.5 crime at issue

18   here.  This contention by Petitioner does not come close to stating a viable

19   sufficiency of the evidence challenge.

20         Petitioner next complains that, after the preliminary hearing, he was held to

21   answer for Counts 5, 15, and 24 even though a witness/accomplice testified that he

22   made up the number used on the fake identification he utilized to pretend to be

23   victim C.L. Middleton and did so without consulting Petitioner.  Again, on a

24   sufficiency of the evidence claim, the Court is only concerned with the evidence that

25   was presented to the jury.  Petitioner has not identified any defect or insufficiency in

26   the trial evidence underlying these three Counts.

27         Next, Petitioner notes that the documentation created in connection with the

28   fraudulent transaction at issue in his Counts 2 and 3 conviction utilized the name of

"Barbara Karr," but when the victim testified, she said that she had the middle name of "Lorraine." Petitioner contends that "there was no attempt to match the personal information in the VIP document to the witness" and apparently believes that this renders his convictions somehow invalid. [Supplemental Brief at 19.] This contention is frivolous. Victim Barbara Lorraine Karr testified and was shown documents generated in connection with the fraudulent loan taken out in her name by Petitioner and his accomplices. One of them listed the borrower's name as "Barbara Lorraine Karr" and others listed the name as "Barbara Karr." Karr testified that some of the personal information listed in these documents was correct as to her and belonged to her and other information was not. She also testified that she did not authorize anyone to use her name to obtain a loan and had contacted law enforcement about the identity theft. [RT 3565-73.] Petitioner's contention that there was "no attempt" to tie the testifying victim to the loan documents is belied by the record.

Finally, Petitioner contends that the trial court erred in denying his motion for a verdict of acquittal as to Count 30, which related to one of the Middleton properties. Count 30 charged Petitioner with identity theft for obtaining and using the driver's license number of "Kim Ocheltree." [CT 6097.] In Ground Seven, Petitioner asserts that, after a bank investigator testified that a teller is the one who places identification information on the back of a check and a victim testified that the number on the back of a check did not belong to her, the prosecutor dismissed Count 1. [Supplemental Brief at 19.] Whether or not any such testimony was given at trial and regardless of the dismissal of Count 1, Petitioner's apparent belief that he cannot have been convicted of identity theft if he provided the stolen driver's license number to the teller to record, rather than writing the stolen number on the back of the check himself, is meritless.

*    *    *    *    *

Petitioner's multiple challenges to the sufficiency of the evidence with respect

65

1   to the foregoing convictions fail, because no matter how liberally they are construed,

2   they do not show that the evidence was insufficient under the governing *Jackson*

3   standard.  Ground Seven does not warrant federal habeas relief.

4

5   **VI.     Ground Eight:  Error In Denying Recusal Motions**

6          Petitioner's eighth claim stems from his lack of success in obtaining the

7   recusal of the entire Riverside County District Attorney's Office.  Petitioner brought

8   two motions pursuant to California Penal Code § 1424, seeking the recusal of both

9   the particular prosecutor involved in the State Case and the entirety of the Riverside

10  County District Attorney's Office.  By Ground Eight, Petitioner contends that he did

11  not receive "full and fair" hearings on the two motions and, further, that the trial

12  court abused its discretion and erred in denying them, because he has met his state

13  law statutory burden of proof, which the State failed to rebut.  [Petition at 7;

14  Supplemental Brief at 26-27.]  In his Petition Memorandum (at 12) and Traverse (at

15  26), Petitioner asserts conclusorily that Section 1424 "contains a liberty interest," a

16  contention he did not make in the state courts.

17         By way of background, Petitioner filed his first Section 1424 motion on

18  December 9, 2008.  [CT 2934-43.]  A hearing took place on December 12, 2008,

19  and the trial court ordered the prosecutor to file a response and scheduled a hearing

20  for January 16, 2009.  [CT 2952; RT 998, 1005-08.]  The Office of the Attorney

21  General of California filed a response on December 26, 2010 [CT 2964-80], the

22  District Attorney's Office filed an opposition on January 9, 2009 [CT 3032-42],

23  Petitioner filed a reply on January 13, 2009 [CT 3043-66], and on the day of the

24  scheduled hearing, Petitioner filed a request for judicial notice [CT 3067-3350].  A

25  hearing on the Section 1424 motion took place on January 16, 2009, and the trial

26  court heard argument from Petitioner and in opposition.  [RT 1009-31.]  After

27  hearing argument and considering all the papers filed, the trial court explained its

28  views on the merits of the motion and denied it, finding the fact that Petitioner had

filed various lawsuits against the prosecutor and others in the District Attorney's Office was not sufficient to warrant recusal and that the evidence submitted by Petitioner was insufficient to warrant a finding under Section 1424(a)(1) of an actual conflict of interest that would render it unlikely Petitioner would receive a fair trial. [RT 1031-33; CT 3351.]

Petitioner filed a second Section 1424 motion on May 20, 2010, with supporting exhibits and an addendum filed a week later. [CT 5432-42, 5483-611. 5625-79.] The Clerk's Transcript indicates that the motion was denied at a June 2, 2010 hearing [CT 570], but the transcript of that hearing indicates that a host of other motions were addressed at the hearing and that there was no discussion of the Section 1424 motion, much less a ruling on it [RT 1989-2068]. At a June 22, 2010 hearing, the trial court appeared ready to address the second Section 1424 motion, but the prosecutor objected on the ground that the Attorney General's Office had not been served. After Petitioner was unable to provide proof of such service, the matter was put over. [RT 2504-07, 2515; CT 5899-900.] On July 19, 2010, the Attorney General's Office filed a response to the motion, and a hearing took place on that same date. [CT 6131-55.] As before, Petitioner was allowed to argue his position at some length, as was the opposition. The trial court then denied the motion, finding that a prima facie showing for recusal had not been made and the fact that litigation had been filed against the prosecutor and the District Attorney's Office was not sufficient to establish a conflict. The trial court noted that it had reviewed the earlier Section 1424 motion decided by the prior assigned trial judge, which raised similar grounds, but then stated that it had reexamined the issues and drawn its own conclusion that there was no prima facie showing necessitating an evidentiary hearing. [RT 3305-16; CT 6119.]

Petitioner's contention that he had a "liberty interest" in obtaining recusal pursuant to Section 1424 is unexhausted, given that he failed to raise it in the CSC Petition or otherwise in the state high court. Thus, the only questions actually

1    before the Court are (1) whether, as Petitioner asserts, he failed to receive a full and

2    fair hearing on his two recusal motions, and (2) whether the trial court somehow

3    erred in denying the motions to a degree cognizable in federal habeas review.

4          The first (full and fair hearing) question is readily resolved against Petitioner.

5    The record shows that the trial court considered Petitioner's filings carefully and

6    adequate hearings took place on the motions at which Petitioner was allowed to

7    present his arguments, which in turn were fairly considered (the trial court's

8    comments make that clear).  That Petitioner did not prevail does not establish that

9    his hearings were not full and fair.  Significantly, Petitioner does not cite, and the

10   Court is not aware of, any clearly established Supreme Court holding dictating the

11   type of hearing a party must receive when a motion is brought to recuse the

12   prosecutor or, even, that a that a hearing is required at all.  For that reason alone, the

13   state court's rejection of this claim cannot be objectively unreasonable.  *See Wright*

14   *v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to

15   the question presented, . . . it cannot be said that the state court unreasonabl[y]

16   appli[ed] clearly established Federal law.  Under the explicit terms of § 2254(d)(1),

17   therefore, relief is unauthorized." (citation and internal quotation marks omitted));

18   *Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this

19   Court . . . , it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly

20   established Federal law.'" (citation omitted)).  In any event, no federal constitutional

21   issue is pleaded or even implicated by Petitioner's full and fair hearing arguments,

22   particularly in light of the record.

23         Petitioner's second complaint – that he had satisfied Section 1424's requisites

24   for establishing a presumption of conflict, which the State failed to rebut, thus

25   entitling him to recusal – also fails readily.  The trial court found that Petitioner had

26   not met his burden, and at most, Petitioner complains of state law error, *to wit*, that

27   under the statute, he should have been granted recusal and the trial court's finding

28   otherwise was wrong.  Whether or not Petitioner satisfied Section 1424's requisites

for obtaining recusal is a question of state law alone; the same is true as to whether or not the trial court abused its discretion (as Petitioner complains) in denying recusal. *See Andrews v. Lizarraga*, No. CV 17-02579-JLS (DFM), 2020 WL 716750, at *8 (C.D. Cal. Jan. 8, 2020) ("Petitioner's argument that the trial court had abused its discretion under Cal. Penal Code § 1424 [is] a state law claim that is not cognizable on federal habeas review."), adopted by 2020 WL 707124 (Feb. 8, 2020); *Heath v. Spearman*, No. EDCV 13-99-JLS (PJW), 2017 WL 1745070, at *15 (C.D. Cal. Mar. 28, 2017) (rejecting petitioner's attempt to relitigate the trial court's denial of his Section 1424 motion, because that question was a state law issue), adopted by 2017 WL 1740018 (May 2, 2017). Petitioner's Section 1424 claim simply is not cognizable on federal habeas review. *See Wilson*, 562 U.S. at 5; *Langford*, 110 F.3d at 1389.

To the extent that Petitioner seeks to equate a misapplication of Section 1424 with some sort of constitutional error (although he has not alleged, much less exhausted, any such federal claim), his effort would fail. Critically, the California Supreme Court has expressly rejected the suggestion that "every erroneous denial of a recusal motion under Section 1424 is a deprivation of due process," noting that Section 1424 instead serves a "prophylactic function," namely, to avoid conflicts that might lead ultimately to due process violations. *People v. Vasquez*, 39 Cal. 4th 47, 59 (2006) (rejecting claim that erroneous denial of recusal motion under Section 1424 deprived defendant of due process and noting that even an erroneous denial of a motion under Section 1424 "does not necessarily" lead to a denial of a fair trial).

In addition, as the California Supreme Court recognized in *Vasquez*, the Supreme Court "has not decided whether there is a general due process right to a conflict-free prosecutor." *Johnson v. Horel*, No. C 07-4483 PJH, 2010 WL 4722634, at *23 (N.D. Cal. Nov. 12, 2010), *aff'd by* 546 Fed. Appx. 684 (9th Cir. Nov. 26, 2013); *see also Vasquez*, 39 Cal. 4th at 60 ("Neither this court nor the United States Supreme Court has delineated the limitations due process places on

69

1  prosecutorial conflicts of interest.").  There is no Supreme Court decision holding

2  that due process is violated by the failure to recuse a district attorney's office when,

3  as here, the defendant in a pending criminal action chooses to bring a civil suit

4  against the prosecutor and prosecution investigators.  Petitioner cites nothing to

5  show that recusal of the Riverside County District Attorney's Office was

6  constitutionally mandated and that the trial court's failure to grant recusal under

7  Section 1424 effected a federal constitutional violation.  As a result, Section

8  2254(d)(1) necessarily is unsatisfied.  *See Priutt v. Vega*, No. EDCV 13-1120-VAP

9  (SJW), 2014 WL 5320398, at *4 (C.D. Cal. Aug. 22, 2013) (finding that, because

10  there was no Supreme Court authority  governing the circumstances before it, the

11  denial of the petitioner's claim that due process was violated by the failure to grant

12  his motion to recuse the prosecutor's office could not be said to be contrary to or an

13  unreasonable application of clearly established federal law) (citing *Carey, supra*),

14  adopted by 2013 WL 5320399 (Oct. 16, 2014).

15        Ground Eight fails for all the reasons set forth above.  Accordingly, the eighth

16  claim should be denied.

17

18  **VII.  Ground Nine: Error In Denying Advisory Counsel Motion**

19        As noted earlier, Petitioner exercised his right of self-representation and

20  represented himself throughout many of the pretrial proceedings, during trial, and in

21  various post-trial proceedings.  In his ninth claim, Petitioner complains that the trial

22  court denied a motion to have advisory counsel appointed to handle expert witness

23  "issues."  Petitioner alleges – without citation to the record – that on an unidentified

24  date, he filed a motion asking the trial court to appoint advisory counsel for him, but

25  the trial court denied it and "placed the responsibility" for obtaining a defense expert

26  on the attorneys representing his co-defendants.  Petitioner contends that the trial

27  court abused its discretion, because there were a number of things that an expert

28  could have done that would have been valuable to his defense.  He also asserts that,

under *McCaskle v. Wiggins*, 465 U.S. 168 (1984), the trial court's denial violated his *Faretta* rights.  [Supplemental Brief at 28-30; Traverse at 27-29.]

Given the volume of the pretrial record (25 double-sided volumes of the Clerk's Transcript and 14 double-sided volumes of the Reporter's Transcript generated in connection with pretrial proceedings alone) and Petitioner's failure to indicate the date of the filing and hearing of his motion for advisory counsel, much less to provide a record citation, the Court is not inclined to scour thousands of transcript pages in an effort to locate the motion and related hearing record.  For argument's sake, the Court will assume Petitioner's barebones and vague allegations about what happened are accurate, because it does not matter whether they are or are not for purposes of resolving Ground Nine.

When a trial court has determined that a defendant's waiver of his right to counsel is valid, the court may appoint advisory counsel to assist the pro se defendant without infringing on his right to self-representation.  *McCaskle v. Wiggins*, 465 U.S. 168, 176-77 (1984).  While a trial court may appoint advisory counsel without infringing on a defendant's self-representation right, including over the defendant's objection (*id.* at 184), a defendant who elects to represent himself has no federal constitutional right to have advisory counsel appointed.  *See United States v. Moreland*, 622 F.3d 1147, 1155 (9th Cir. 2010) ("a defendant who waives his right to counsel does not have a right to advisory counsel"); *United States v. Salemo*, 81 F.3d 1453, 1460 (9th Cir. 1996) (explaining that "a defendant does not have a constitutional right to represent himself and have access to 'advisory' or 'consultative' counsel at trial"); *United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994) (affirming denial of request for advisory counsel, because "[a] defendant does not have a constitutional right to 'hybrid' representation").  "*Faretta* does not require a trial judge to permit 'hybrid' representation."  *McKaskle*, 465 U.S. at 183.  As the Ninth Circuit has made clear, the Sixth Amendment is not implicated by a trial court's failure to appoint advisory counsel when a defendant so

71

1 requests. *See Locks v. Sumner*, 703 F.2d 403, 407 (9th Cir. 1983) (denial of request

2 for advisory counsel did not violate Sixth Amendment, because a pro se defendant

3 has no absolute right to advisory counsel); *see also Robbins v. Smith*, 411 Fed.

4 Appx. 37, 39 (9th Cir. Dec. 29, 2010) ("there is no Sixth Amendment right to

5 advisory counsel").

6       Given that a pro se defendant has no constitutional right to have advisory

7 counsel appointed, the denial of such a request does not give rise to any cognizable

8 federal habeas issue. *See Faulcon v. Busby*, No. CV 11-01040 DDP (AN), 2011

9 WL 7983733, at *5 (C.D. Cal. Dec. 22. 2011) (finding the claim raised here to be

10 not cognizable, because there is no constitutional right to have advisory counsel

11 appointed upon request), adopted by 2012 WL 2053789 (June 5, 2012). That

12 California law permits trial courts to appoint advisory counsel in the exercise of

13 their discretion[29] does not give rise to any federal issue cognizable here, because

14 whether or not the trial court abused its discretion in denying Petitioner's motion is a

15 matter of state law only that is not cognizable. *See Wilson*, 562 U.S. at 5.

16       Petitioner's reliance on *McCaskle* as putative support for Ground Nine is

17 misplaced. *McCaskle* involved a pro se defendant's complaint that the advisory

18 counsel appointed for him was too involved and participated too much in the

19 defense, at times against the defendant's wishes. The issue for the Supreme Court

20 was whether advisory counsel's actions had unduly infringed on the defendant's

21 *own* Sixth Amendment right to represent himself (they did not). 465 U.S. at 176-88.

22 Nothing about *McCaskle* supports Petitioner's Ground Nine claim. Petitioner's

23 assertion that the trial court "micro-managed" Petitioner's defense efforts by

24 declining to appoint advisory counsel and allegedly suggesting that counsel for co-

25 defendants obtain an expert to aid the defense effort as a whole does not implicate

26 the Supreme Court's *McCaskle* analysis, rationale, or decision.

27

28     [29]    *See People v. Bigelow*, 37 Cal. 3d 731, 742 (1984).

1  Given that the Supreme Court has never held that a criminal defendant who

2  has exercised his constitutional right to self-representation has a simultaneous right

3  to the assistance of counsel, whether in a standby, advisory, or co-counsel capacity

4  and, instead, has stated that *Faretta* does not require a trial judge to permit hybrid

5  representation (*McKaskle*, s*upra*), the California Supreme Court could not have

6  unreasonably applied clearly established federal law when none exists. *See Brewer*

7  *v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates

8  clearly established federal law relating to the legal issue the habeas petitioner raised

9  in state court, the state court's decision cannot be contrary to or an unreasonable

10  application of clearly established federal law."); see also *Musladin*, 549 U.S. at 77.

11  Thus, Section 2254(d)(1) forecloses relief based on Ground Nine.

12

13  **VIII.  Ground Ten:  Evidentiary Error**

14  In Ground Ten, Petitioner alleges – without citation – that on an unidentified

15  date prior to trial, he moved to preclude an unidentified "witness from WMC" from

16  testifying "for Penal Code § 1054 violations."  He alleges – again without citation –

17  that at trial, the prosecutor produced an unidentified WMC witness and Petitioner

18  renewed his Section 1054 objection, apparently unsuccessfully, because the witness

19  testified.  Petitioner thereafter filed a motion to strike the witness's testimony, which

20  the trial court denied summarily – again alleged without citation to the record.

21  Petitioner asserts that the trial court's failure to grant his motion to strike was an

22  abuse of discretion.   [Supplemental Brief at 30.]

23  In his Traverse (at 29), Petitioner cites to CT 6324-29, which contains:  an

24  August 16, 2010 motion he made pursuant to Section 1054, which sought to exclude

25  a witness from Wells Fargo Bank, a male witness from "the former Wachovia

26  Bank," and a witness from Stewart Title; and an August 16, 2010 motion in limine

27  related to Counts 47 and 48, including testimony and evidence proffered by Diane

28  Taylor.  Petitioner also refers to a motion he made after Taylor testified, seeking to

73

1    strike her testimony.  [CT 6357-59.][30]

2    　　　Again, a federal habeas corpus court does not undertake to review a state's

3    application of its own laws, but rather must determine whether a prisoner's

4    constitutional or other federal rights have been violated.  *Estelle*, 502 U.S. at 67-68;

5    *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990).  Generally, the admissibility of

6    evidence is a matter of state law and is not reviewable in a federal habeas corpus

7    proceeding.  *Estelle*, 502 U.S. at 67; *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th

8    Cir. 1985).  Nevertheless, the Ninth Circuit has concluded that there can be federal

9    habeas relief for the admission of prejudicial evidence if the admission was

10   fundamentally unfair and resulted in a denial of due process.  *Holley v. Yarborough*,

11   568 F.3d 1091, 1101 (9th Cir. 2009).  "Only if there are no permissible inferences

12   the jury may draw from the evidence can its admission violate due process.  Even

13   then, the evidence must 'be of such quality as necessarily prevents a fair trial.'"

14   *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quoting *Kealohapauole*

15   *v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986)).

16   　　　When a claim of evidentiary error is governed by Section 2254(d) review,

17   however, the ability to grant habeas relief on the foregoing basis is restricted.  The

18

19   _____

20   [30]    As exhausted in the state court, Ground Ten did not allege any federal constitutional error
     and was vaguely pleaded at best.  Petitioner did not identify the witness in issue and did not
21   indicate that her testimony was prejudicial, much less why.  Instead, he identified only that her
     testimony lacked foundation and that there had been a failure to provide discovery as the reasons
22   why he believed her testimony should have been excluded, and he labeled the failure to grant his
     post-testimony motion to strike as an abuse of discretion.  The Petition provided no clarification,
23   alleging only that the trial court committed unspecified "error" in denying a motion to strike and
     allowing a witness to testify and that this error rendered his trial fundamentally unfair in violation
24   of the Fourteenth Amendment.

25   　　　In his Traverse (at 7), Petitioner has added new allegations that:  the denial of his motion
     violated due process and his right to a fair trial; and Taylor's testimony supported the convictions
26   on Counts 47 and 48 and the jury's true finding on the California Penal Code § 186.11
     enhancement, and thus, the failure to exclude it was not harmless error.  For the reasons set forth
27   earlier, the Court will not address Petitioner's belatedly-raised and unexhausted allegations in the
     Traverse regarding Taylor's testimony.  *See Cacoperdo*, 37 F.3d at 507.

28

1  Ninth Circuit has observed that, "[t]he Supreme Court has made very few rulings

2  regarding the admission of evidence as a violation of due process," and "has not yet

3  made a clear ruling that admission of irrelevant or overtly prejudicial evidence

4  constitutes a due process violation sufficient to warrant issuance of the writ."

5  *Holley*, 568 F.3d at 1101.  Absent such a ruling from the Supreme Court, a state

6  court's ruling regarding the assertedly erroneous admission of evidence could not be

7  an unreasonable application of clearly established federal law and a federal habeas

8  court is "without power" to issue habeas relief, even when the admission of the

9  evidence could be said to violate due process under Ninth Circuit precedent.  *Id.* at

10  1101 & n.2.

11       With these principles in mind, it is clear that Petitioner's tenth claim fails.

12  Petitioner contends that Taylor should not have been allowed to testify because:  her

13  testimony lacked foundation due to her lack of personal knowledge, in violation of

14  California Evidence Code § 702, and the chart she had created was based on

15  hearsay; and the prosecutor had committed unspecified discovery violations, in

16  violation of California Penal Code § 1054.  Critically, Petitioner did not contend in

17  the CSC Petition and does not contend here that Taylor's testimony was irrelevant

18  or unduly prejudicial.  Rather, Petitioner's argument is that Taylor's testimony

19  should have been excluded for state law technical reasons, and thus, the trial court

20  abused its discretion by denying his motion to strike it.  Petitioner's complaints

21  about the trial court's failure to grant his motion to strike rest entirely on state law

22  grounds, *i.e.,* an asserted noncompliance with California evidentiary and discovery

23  rules.

24       Whether or not Taylor's testimony satisfied the requisites of California

25  Evidence Code § 702 or should have been excluded as a discretionary matter under

26  California Penal Code § 1054 is purely a state law issue.  This is not a cognizable

27  federal habeas claim, because the only relevant question on federal habeas review is

28  "whether a conviction violated the Constitution, laws, or treaties of the United

1    States." *Estelle*, 502 U.S. at 67-68 (finding that Circuit Court erred in finding a due

2    process violation based on its conclusion that evidence was incorrectly admitted

3    under California law); *see also Zapien v. Davis*, 849 F.3d 787, 794 (9th Cir. 2015)

4    (claim that admission of hearsay evidence was "such an egregious violation of

5    California evidentiary law that it constituted a due process violation" necessarily

6    failed under Section 2254(d)(1) review, because "there is no Supreme Court case

7    establishing the fundamental unfairness of admitting" such hearsay testimony);

8    *Johnson v. Sublett*, 63 F.3d 926, 931 (9th Cir. 1995) (petitioner's complaint that

9    admission of physical evidence violated due process because there was insufficient

10   evidence to tie it to the crime charged rejected, because the "argument presents

11   state-law foundation and admissibility questions that raise no federal habeas

12   issues"). Petitioner's Ground Ten argument that state law evidentiary and discovery

13   error occurred is not cognizable on federal habeas review and cannot warrant relief

14   under Section 2254(d)(1).

15         Even if the Court were to consider Petitioner belatedly-raised and

16   unexhausted assertions that the failure to grant his motion to strike Taylor's

17   testimony rendered his trial unfair and/or violated due process, Ground Ten

18   nonetheless would fail on its face. Petitioner's bare and generic invocation of the

19   terms "due process" or "fair trial" based on purported state law evidentiary error not

20   only is insufficient to surmount Section 2254(d)(1) but fails as well to satisfy the

21   Ninth Circuit's articulation of the relevant standard for relief, namely, that the

22   assertedly erroneous admission of evidence cannot warrant habeas relief unless it

23   rendered the trial fundamentally unfair. *Holley*, 568 F.3d at 1101; *see also Drayden

24   v. White*, 232 F.3d 704, 710 (9th Cir. 2000) ("The improper admission of evidence

25   does not violate the Due Process Clause unless it is clearly prejudicial and 'rendered

26   the trial fundamentally unfair.'") (citation omitted). A habeas petitioner "bears a

27   heavy burden in showing a due process violation based on an evidentiary decision."

28   *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005). Here, even if Petitioner's

claim was not foreclosed by Section 2254(d)(1), he has not met the heavy burden that exists under Ninth Circuit precedent.  He complains of an unfairness stemming from a failure of compliance with state law evidentiary rules regarding foundation and discovery, not of any sort of actual prejudice that could implicate due process or fair trial concerns.  Significantly, in his Traverse, Petitioner concedes that the Taylor testimony supported his conviction on two counts and of an enhancement.  Thus, it cannot be said that the testimony did not give rise to any permissible inferences and/or was not relevant.  *Jammal*, 926 F.2d at 920.  There simply is no basis, factual or legal, under Petitioner's vague and cursory allegations for finding that the admission of Taylor's testimony rendered Petitioner's trial fundamentally unfair in violation of due process.

Petitioner has not surmounted his burden under Section 2254(d)(1), nor has he shown any basis for relief in connection with his tenth claim.  Accordingly, Ground Ten should be denied.

### IX.    Ground Eleven: Error As To Motion For New Trial

In Ground Eleven, Petitioner complains that the manner in which the trial court handled his motion for a new trial was an abuse of discretion and violated his right to procedural due process.  Petitioner contends that it was improper for the trial court to "summarily" deny the motion.  Petitioner also asserts – without record citation – that the trial court denied a motion for trial transcripts and that this impeded his ability to address certain issues in his new trial motion (although he inconsistently points to portions of the motion in which he did raise these issues).  [Supplemental Brief at 31-32; Traverse at 30.]  This claim fails for two distinct reasons.

First, Petitioner's assertion that the trial court "summarily" denied his motion for a new trial is flatly belied by the record.  The trial court held a hearing on the motion and allowed Petitioner to argue at length, and the trial court articulated its

reasons for denying the motion in detail.  [*See* Supp. RT 5-32; Supp. CT 89.]  In addition, the trial court heard lengthy argument on another motion Petitioner had filed seeking to "arrest" the judgment under California Penal Code § 1185 [CT 6846-47], which raised various grounds for why he should get a new trial and which the trial court described as a "motion for a new trial."  The trial court denied that motion after two days of argument, again articulating in detail its reasons for doing so.  [Supp. RT 35-57; Supp. CT 112-13.]  As a side note, Petitioner's assertion that Respondent failed to include his motion in the lodged state record for this case is untrue.  [*See* Supp. CT 31-45 (new trial motion), 95-104 (reply).]  Petitioner's Ground Eleven assertion that his right to due process was violated because the trial court denied his motion for a new trial summarily is untrue, and denial is warranted for this reason.[31]

Second, motions for a new trial are a creature of state statutory law in California, namely, California Penal Code § 1181.  They are neither required by federal constitutional principles nor governed by them.  *See Gupta v. Beard*, No. CV 14–1709-CJC (KK), 2015 WL 1470859, at *27 (C.D .Cal. Mar. 30, 2015) ("A 'motion for new trial in a criminal case is a [California] statutory right,'" not one required by the federal Constitution) (citation omitted).  Whether or not the trial court committed any error in connection with Petitioner's motion for a new trial is not a question of federal constitutional import and, at most, implicates state law only.  Petitioner's belatedly-raised argument in his Traverse – that California Penal Code § 1181 creates a liberty interest that guarantees citizens the right to file motions for a new trial – does not alter that conclusion and, in any event, fails on its face, because Petitioner *did* file such a motion, which was actually considered at a

---

[31]      Petitioner also complains that a motion for trial transcripts was denied, but provides no record citation.  There is such a motion in the record [Supp. CT 20-23], but the Court has not located any ruling on it in the record (nor should the Court be required to scour the record based on Petitioner's failure to support his claim).  Accordingly, this complaint by Petitioner is unsupported.

1  hearing and then denied.

2      Ground Eleven rests solely on state law and it cannot be considered, because

3  it is not cognizable.  *See, e.g., Borges v. Davey*, 656 Fed. App'x 303, 304-05 (9th

4  Cir. 2016) (finding petitioner's "contention that the trial court misapplied state law

5  in denying his motion for a new trial is not cognizable on federal habeas review");

6  *Renteria v. Montgomery*, No. CV 19-03117-FMO (RAO), 2020 WL 1426639, at

7  *13 (C.D. Cal. Feb. 20, 2020) (claim that trial court erred in finding that evidence

8  was not "newly discovered" within the meaning of the new trial motion statute held

9  to be not cognizable), accepted by 2020 WL 1332088 (Mar. 23, 2020); *Martinez v.

10  Gonzalez*, No. 17-cv-1760-WQH, 2019 WL 1590471, at * 7 (S.D. Cal. April 12,

11  2019) (an asserted failure to follow state law in adjudicating a new trial motion does

12  not constitute a violation of due process and is not cognizable), aff'd by 796 Fed.

13  App'x 417 (9th Cir. Mar. 6, 2020), cert. denied 2021 WL 78296 (U.S. Jan. 11,

14  2021); *Gilliam v. Hedgepeth*, No. CV 08-1242-VAP (SS), 2014 WL 6750223, at

15  *23 (C.D. Cal. Oct. 22, 2014) ("to the extent [the claim] is premised on the trial

16  court's denial of Petitioner's new trial motion, such as suggesting the trial court

17  abused its discretion in denying the motion, it is not cognizable in this proceeding"),

18  accepted by 2014 WL 6751488 (Nov. 25, 2014); *Long v. Lattimore*, No. EDCV 10-

19  277-PSG (SP), 2012 WL 1400898, at *11 (C.D. Cal. Mar. 16, 2012) (claim that the

20  trial court applied an incorrect "substantial evidence" standard instead of thirteenth

21  juror standard when denying new trial motion implicated only state criminal

22  procedure, did not give rise to a fair trial/due process claim, and was not

23  cognizable), adopted by 2012 WL 1401779 (Apr. 19, 2012), aff'd *sub nom. Long v.

24  Johnson*, 736 F.3d 891 (9th Cir. 2013).

25      Accordingly, for these reasons, Ground Eleven should be denied.

26

27  **X.    Ground Twelve:  Section 1385 Motion Error**

28      In his twelfth claim, Petitioner complains about the trial court's denial of a

79

1   post-conviction motion he filed, namely, a motion filed on September 10, 2010,

2   brought under California Penal Code § 1385 [*see* CT 6849-56].[32]  Petitioner

3   complains that the trial court abused its discretion in "summarily" denying the

4   seventh ground raised in the motion, namely, his request that Counts 44 and 45 be

5   dismissed due to alleged prosecutorial misconduct in having those two Counts

6   reinstated after Petitioner had succeeded in having them dismissed.  Petitioner

7   apparently contends that California Penal Code § 1387(a) barred the reinstatement

8   of these two Counts, and thus, the trial court erred in allowing their reinstatement.

9   [CSC Habeas Petition, Supplemental Brief at 32-33; Traverse at 30-32.]

10          Petitioner does not allege that the denial of the Section 1385 motion was a

11   violation of the United States Constitution or of federal law, nor did he do so when

12   he raised the claim in the California Supreme Court.[33]  He alleges, at most, that the

13   trial court abused its discretion by failing to dismiss Counts 44 and 45 in response to

14   Petitioner's post-conviction Section 1385 motion, because under California law, the

15   two counts should not have been allowed to be reinstated in the first instance.

16   Whether or not Counts 44 and 45 should have been reinstated is solely a question of

17   state law and is not a cognizable basis for federal habeas relief.  *Wilson*, 562 U.S. at

18   5; *Estelle*, 502 U.S. at 67-68.  Characterizing the denial of the Section 1385 motion

19   as an abuse of discretion does not change things, because whether or not the trial

20   court abused its discretion in doing so does not give rise to a basis for federal habeas

21   relief.  Section 1385 is an entirely state law creation, and therefore, whether the trial

22   court correctly used its discretion in not striking Counts 44 and 45 under the statute

23

24   [32]    By its express terms, Section 1385 allows dismissal motions to be brought only by the

25   prosecutor or for the trial court to act on its own motion.  Petitioner's Section 1385 motion
     "invited" the trial court to dismiss various counts, which is allowable under California law.

26

27   [33]    Petitioner invokes *Morris v. Ylst*, 447 F.3d 735 (9th Cir. 2006), at one point, but that case
     has nothing to do with the question of whether the trial court erred in denying his Section 1385

28   motion or in reinstating Counts 44 and 45.  Citing a wholly inapposite federal case does not equate
     to alleging a federal violation and cognizable claim.

is a matter of state, not federal, law. State law claims are not remediable on federal habeas review, even if state law was erroneously interpreted or applied.  *See Swarthout*, 562 U.S. at 219; *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law.").  Petitioner's contention that the trial court abused its discretion in denying his Section 1385 motion simply is not cognizable on federal habeas review. *See Williams v. Borg*, 139 F.3d 737, 740 (9th Cir. 1998) (federal habeas relief is available "only for constitutional violation, not for abuse of discretion").

Accordingly, Ground Twelve should be denied.

## XI.   Ground Thirteen: Error Regarding Motion To Suppress

As noted earlier (p. 35 n.15), following his conviction, Petitioner filed another motion to suppress under California Penal Code § 1538.5 on September 30, 2010, in which he asked the trial court to reconsider its prior rulings on the Section 1538.5 Motion.  [*See* CT 6857-67.]  In Ground Thirteen, Petitioner asserts that the trial court abused its discretion when it "summarily" denied this post-conviction motion to suppress.  [Supplemental Brief at 33-35; Traverse at 32-33.]

As a threshold matter, Petitioner's contention that the September 30, 2010 motion to suppress was denied "summarily" is not correct.  As explained earlier, the motion originally was set for hearing on December 10, 2010, and the hearing was continued to December 15, 2010.  [CT 6909; Supp. RT 39.]  At the hearing, Petitioner was allowed to argue the merits of the motion and, after he had done so, the trial court denied it as raising issues that were previously litigated and as untimely.  [Supp. CT 115; Supp. RT 65-67.]

For the same reasons discussed above in connection with Ground Twelve, whether or not the trial court abused its discretion in denying this post-conviction motion to suppress is not a matter of federal habeas concern.  The claim is not cognizable for that reason alone.  In addition, to the extent that Petitioner raises any

Fourth Amendment issue by this claim (which he does not do expressly), the claim

also is not cognizable for a second reason, as discussed in Section I.C., namely, it is

barred by the *Stone v. Powell* doctrine. Petitioner's assertions that he did not receive

a full and fair hearing are foreclosed by the record.

Accordingly, Ground Thirteen should be denied.


## XII.   Ground Fourteen: Instructional Error

As alleged in the Petition, Ground Fourteen is cryptic, to say the least.

Petitioner alleges only that unidentified "jury instruction issues, violating federal

concerns" occurred, and that the jury "was never called upon to determine if the

People established beyond a reasonable doubt a theory of embezzlement." [Petition

at 9.] In the CSC Petition, the claim alleged three things, none of which were

claimed to have been a federal violation. First, Petitioner asserted that the trial court

erred in denying a motion he brought under California Penal Code § 1185, which he

alleged challenged the trial court's failure to instruct the jury with CALCRIM No.

3220. Petitioner does not explain why this failure was erroneous, but labeled it

"structural error." Second, Petitioner asserted that the trial court erred in instructing

the jury with CALCRIM No. 252 regarding Counts 4 and 17, because this allegedly

was a general intent instruction rather than a specific intent instruction. Third,

Petitioner asserted that the trial court erred in failing to instruct the jury with

CALCRIM No. 1806 regarding embezzlement. Petitioner cites to a state law

decision and asserts that the instructions actually given failed to include all of the

element needed to be found by the jury to convict him of embezzlement.

[Supplemental Brief at 35-36.] Based on Petitioner's comment in his Traverse (at

33), it appears that Petitioner wishes to raise here as his fourteenth claim the above-

described claim alleged in his CSC Petition. Accordingly, the Court will analyze

Ground Fourteen as raising the claims of instructional error set forth above.

## A.  The Clearly Established Federal Law

"[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).  Even if this type of instructional error occurred, "such an error does not necessarily constitute a due process violation." *Waddington v. Sarasaud*, 555 U.S. 179, 190 (2009).  A petitioner must show both error in the instruction given and a reasonable likelihood that the jury applied the instruction in a way that violated the Constitution.  *Id.* at 190-91; *Estelle*, 502 U.S. at 72; *Boyde v. California*, 494 U.S. 370, 380 (1990).  The instruction must be considered in the context of the trial record and the instructions as a whole.  *Estelle*, 502 U.S. at 72; *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973).  It is not enough to show a "slight possibility" that the jury misapplied an instruction.  Sarasaud, 555 U.S. at 191.  Rather, a petitioner must show that the instructional error "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Cupp*, 414 U.S. at 147.  In addition, because an omitted instruction is less likely to be prejudicial than a misstatement of the law, a petitioner seeking habeas relief based on the failure to give a particular instruction bears an especially heavy burden.  *Henderson*, 431 U.S. at 155.

Even if an allegedly erroneous instruction did rise to the level of a violation of federal due process, habeas relief still would not be warranted unless the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *See Hedgpeth v. Pulido*, 557 U.S. 57, 60-62 (2008) (*per curiam*) (holding that, with one exception not applicable here, claims of instructional error are subject to harmless error analysis).

## B.  CALCRIM No. 3220

Following his conviction, Petitioner filed a California Penal Code § 1185 motion to arrest the judgment.  One of the grounds he raised was that the trial court

1    had failed to instruct the jury with CALCRIM No. 3220,[34] arguing that because of

2    this failure, the California Penal Code § 12022.6 enhancements[35] the jury found true

3    in connection with Counts 9-11, 26-27, and 47-48 were invalid.[36]  [CT 6846-47.]

4    The prosecutor filed an opposition, in which he argued that the error was harmless

5    [Supp. CT 72-75], and Petitioner filed a reply, in which he argued that the error was

6    structural [Supp. CT 91-94].  In his reply, Petitioner noted that, during its

7    deliberations, the jury sent a note asking whether, with respect to the Section

8    12022.6(a)(2) enhancement alleged in connection with Counts 9 and 26, "does it

9    have to include all three 'took, damages and destroyed.' Define destroyed &

10   damaged." [*See* CT 6677.]  As to the first question, the trial court responded that

11   the words were disjunctive, as in "took and/or damaged and/or destroyed." [*Id.*]  As

12   to the second question, the trial court responded that the terms destroyed and

13   damaged should be "applied using their ordinary, everyday meaning."  [*Id.*]

14        The trial court held a hearing on Petitioner's motion.  The parties and the trial

15   court agreed that CALCRIM No. 3220 had not been given and that the use notes for

16   the instruction direct that it be given sua sponte when the enhancement is alleged.

17   [Supp. RT 35-37.]  The trial court noted that No. 3220 does not contain a definition

18   _____

19   [34]     In pertinent part, CALCRIM No. 3220 provides: "If you find the defendant guilty of the

20   crime[s] charged in Count[s] ___[,] . . ., you must then decide whether the People have proved the
     additional allegation that the value of the property (taken[,]/ [or] damaged[,]/ [or] destroyed) was

21   more than $_____ <*insert amount alleged*>.  [¶] To prove this allegation, the People must prove
     that: [¶] 1. In the commission . . . of the crime, the defendant (took[,]/ [or] damaged[,]/ [or]

22   destroyed) property; [¶] 2. When the defendant acted, (he/she) intended to (take[,]/ [or] damage[,]/
     [or] destroy) the property; [¶] AND [¶] 3. The loss caused by the defendant's (taking[,]/ [or]

23   damaging[,] [or] destroying) the property was greater than $_____ <*insert amount alleged*>. . .
     . [¶] The People have the burden of proving this allegation beyond a reasonable doubt.  If the

24   People have not met this burden, you must find that the allegation has not been proved."

25   [35]     Former California Penal Code § 12022.6(a)(2) (repealed eff. Jan. 1, 2018) provided for a

26   sentencing enhancement when the defendant took, damaged, or destroyed property of a value
     exceeding $150,000 in connection with the charged crime.

27
     [36]     Contrary to Petitioner's assertion, there was no Section 12022.6 enhancement alleged or

28   found by the jury in connection with Count 10.  [CT 6822.]

1    of damaged or destroyed – the question asked by the jury – and thus, the court did

2    not believe the lack of the instruction made a difference.  The trial court noted that it

3    was unsure whether the error was structural (as Petitioner argued) or subject to

4    harmless error analysis, and took the motion under submission.  [Supp. CT 36-38.]

5      At a subsequent hearing, the argument continued, including on the question of

6    whether the error was structural or not.  [Supp. CT 47-56.]  The trial court

7    concluded that, while it was error not to give CALCRIM No. 3220, the error was not

8    structural and did not warrant a new trial.  The trial court noted the clear evidence

9    that the amounts involved exceeded $150,000, and that this was not in dispute.  The

10    trial court noted that the jury plainly found that there was an intent to deprive or

11    damage, because that element was a part of the instructions for the underlying

12    offense.  The trial court further found that the Section 12022.6 taking, etc. language

13    is disjunctive and that the guilty verdicts on the underlying counts plainly indicated

14    that the jury had found a taking.  The trial court noted its belief that there would not

15    have been a different result even if No. 3220 had been given.  [Supp. RT 56-58.]

16      Petitioner's CALCRIM No. 3220 claim fails for two reasons.  First, the trial

17    court was correct – while it may have been state law error not to sua sponte give the

18    instruction, that error is not structural under federal law.  As the Supreme Court has

19    explained, "*[m]ost* constitutional mistakes call for reversal only if the government

20    cannot demonstrate harmlessness" and "[o]nly the rare type of error—in general,

21    one that 'infect[s] the entire trial process' and 'necessarily render[s] [it]

22    fundamentally unfair'—requires automatic reversal."  *Glebe v. Frost*, 574 U.S. 21,

23    23 (2014) (*per curiam*) (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999);

24    internal quotation marks omitted).  No Supreme Court decisions clearly place any of

25    the instructional errors claimed in Ground Fourteen as the "rare" type of error that

26    falls within this scope.  Indeed, the Supreme Court repeatedly has held otherwise,

27    finding the type of error alleged here to <u>not</u> constitute structural error and, instead, to

28    be subject to harmless error analysis.  *California v. Roy*, 519 U.S. 2, 5 (1996)

1   (finding error in jury instruction that defined crime was an error of omission or trial

2   error that had be reviewed under harmless error standard); *see also Mitchell v.*

3   *Esparza*, 540 U.S. 12, 16 (2003) ("we have often held that the trial court's failure to

4   instruct a jury on all of the statutory elements of an offense is subject to harmless-

5   error analysis"); *Neder*, 527 U.S. at 8-11 (holding that erroneous instruction that

6   omits element of offense is subject to harmless error review). Petitioner's assertion

7   of structural error is without merit; at a minimum, it was not objectively

8   unreasonable for the California Supreme Court to find it meritless under Supreme

9   Court precedent.

10          Second, any error in not giving CALCRIM No. 3220 plainly was harmless.

11  An error is harmless unless it "had substantial and injurious effect or influence in

12  determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)

13  (citation and quotation marks omitted). A review of the Section 1185 motion and

14  Petitioner's arguments makes clear that he did not claim that the jury could not have

15  found the in excess of $150,000 requirement met without CALCRIM No. 3220, and

16  he does not claim that here. As the trial court reasoned, there never was any issue

17  that the amount at issue for the Section 12022.6 enhancement somehow could have

18  been found to be less than $150,000, because the charges and evidence showed it to

19  be in excess of that amount, which Petitioner did not dispute. Rather, the issue was

20  whether the jury understood that it could find that the property was taken or

21  destroyed or damaged and what the latter terms meant. In response to the jury's

22  question, the trial court clarified that these requirements were disjunctive; only one

23  of them needed to be found. As the trial court reasonably determined, in light of the

24  jury's verdicts on the six Counts in issue – which included theft from elder adult and

25  grand theft – the jury obviously had found that Petitioner had "taken" the property in

26  issue.

27          Given the ample evidence supporting a jury finding that Plaintiff had "taken"

28  property in excess of the dollar amount required – evidence that Petitioner does not

contest – any error here necessarily was harmless.  *See Neder*, 527 U.S. at 19 (evidence relevant to omitted element was overwhelming and not contested by defendant); *Johnson v. United States*, 520 U.S. 461, 468-70 (1997) (evidence relevant to proof of omitted element was overwhelming, and thus, no reasonable juror could have found the element unproven).  Moreover, and critically, the trial court also reasonably found that if it had given CALCRIM No. 3320, it would not have made a difference in the jury's verdict, especially given that the instruction did not define "damaged or destroyed" – the question posed by the jury.

Petitioner's Ground Fourteen contention that the trial court erred in not finding structural error in the failure to give CALCRIM No. 3220 fails on the facts and the law.  There is no basis for finding the instructional error to be anything but harmless, and the state court's rejection of this claim was not objectively unreasonable under Section 2254(d).  Accordingly, this aspect of Ground Fourteen should be denied.

## C.  CALCRIM No. 252

In the above-noted Section 1185 motion that Petitioner filed following his conviction, he also challenged the trial court's instruction of the jury with CALCRIM No. 252, which he alleged rendered Counts 4 and 17 invalid.  He argued that CALCRIM No. 252 lowered the prosecution's burden of proving a specific intent crime and allowed the two counts to be found as general intent crimes.  [CT 6846-47; Supp. CT 92-93.]

CALCRIM No. 252 – as given to Petitioner's jury – instructed them that:

> All of the crimes and other allegations charged in this case require proof of the union, or joint operation, of act and wrongful intent.

> The following crimes and allegations requires general criminal intent: Penal Code 530.5(a); 532(a)(1); 368(D); 12022(c); 12021(a)(1); 1231(b)(1) and the lesser included offense of a violation of PC 11350.  For you to

find a person guilty of these crimes or to find the allegations true, that person must not only commit the prohibited act or fail to do the required act, but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime or allegation.

The following crimes require a specific intent or mental state: A violation of Penal Code 487(A), 11351 and 186.10. For you to find a person guilty of these crimes, that person must not only intentionally commit the prohibited act, but must do so with a specific intent. The act and the specific intent required are explained in the instruction for that crime.

[CT 6717; RT 5517-18.]

With respect to the two counts at issue in this claim – Counts 4 and 17 – the trial court instructed the jury with CALCRIM No. 2020 as follows:

The defendant [Petitioner] is charged in Counts 4 and 17 with causing to be made a false written statement about another person's financial condition, or ability to pay in violation of Penal Code section 532a(1).

To prove that the defendant is guilty of this crime, the People must prove that:

1. The defendant caused to be made a false written statement about the financial condition, or means, or ability to pay of another person;

2. The defendant knew that the statement was false;

3. When the defendant caused the statement to be made, he intended that the statement be relied on;

AND

4. The defendant caused the statement to be made to obtain the making of a loan, or extension of credit for his credit.

A person may cause a false statement to be made either directly or indirectly, or through his or her agent. An agent is someone authorized by the defendant to act for him in dealings with third parties.

The People allege that the defendant caused to be made the following statements: In Count 4, it was represented in the VIP Trust Deed Company loan application that Barbara Karr worked for Dynamic, Inc., and made $6500 per month. In Count 17, it was

88

represented in the VIP Trust Deed Company application that C. L. Middleton worked for Coast Service and made $3200 per month.

You may not find the defendant guilty unless you all agree that the People have proved that the defendant caused to be made at least one of these statements and that the statement was false. You must all agree on which false statement he caused to be made.

[CT 6746-47; RT 5532-33.]

At the hearing on the motion, Petitioner complained that CALCRIM No. 252 failed to expressly tell the jurors that the California Penal Code § 532 crime charged in Counts 4 and 17 was a specific intent crime and indicated it was a general intent crime. [Supp. RT 58-60.] The trial court noted that CALCRIM No. 252 told the jurors that the act and intent required are described in the jury instruction particular to the crime charged. [Supp. CT 59.] The trial court rejected Petitioner's assertion that the jury would not have known that Section 532(a)(1) required a specific intent, observing that CALCRIM No. 2020 expressly told the jurors that, to find Petitioner guilty of a violation of Section 532, they had to find that he knew that the statement was false and that when he caused the statement to be made, he intended that it be relied on. The trial court explained that No. 252 is a general instruction regarding the concept of intent, but when the jurors reached the specific instruction for the charged crime – here, No. 2020 – it "tells them specifically what you need to intend." [*Id.*] The trial court again noted the specific intent language in CALCRIM No. 2020, which told the jury "the specific intent for the crime," and denied the motion. [Supp. RT 60.]

Petitioner is correct that CALCRIM No. 252, as given, erroneously listed Section 532(a)(1) among the crimes that required a general criminal intent and not among the crimes that required a specific criminal intent. But, as the trial court noted, the instruction was a general one and expressly directed the jurors to look to the instruction specifically applicable to each charged crime for the act and intent required. The jurors also were told to consider "all" of the instructions together [CT

89

1    6704] and that CALCRIM No. 2020 applied to their consideration of Counts 4 and

2    17 [CT 6746].  Any reasonable juror considering CALCRIM No. 2020 would have

3    had to believe that Petitioner could not be found guilty unless he was found to have

4    possessed the specific intent to knowingly cause a false financial statement to be

5    made and, at the same time, to have intended for the statement to be relied on and

6    for the purpose of obtaining a loan or extension of credit.  In assessing Petitioner's

7    claim, the Court must "generally presume that jurors follow their instructions."

8    *Penry v. Johnson*, 532 U.S. 782, 799 (2001); *see also Weeks v. Angelone*, 528 U.S.

9    225, 234 (2000).  "The Court presumes that jurors, conscious of the gravity of their

10   task, attend closely to the particular language of the trial court's instructions in a

11   criminal case and strive to understand, make sense of, and follow the instructions

12   given them." *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985).

13          Here, there is no reason to find that presumption overcome; Petitioner cites

14   none and the record does not divulge one.  CALCRIM No. 2020 correctly instructed

15   the jury on the intent needed for Counts 4 and 17 and there is no reason to believe

16   that the jury did not find the specific intent required before convicting Petitioner of

17   these two counts.  Accordingly, the state court's denial of this claim was not

18   objectively unreasonable factually or legally, and this claim does not warrant federal

19   habeas relief.

20

21          **D.  CALCRIM No. 1806**

22          The jury was instructed with CALCRIM No. 1804, which pertains to the

23   crime of theft by false pretenses.  Petitioner complains that the trial court also

24   should have instructed the jury with CALCRIM No. 1806, which pertains to theft by

25   embezzlement.  He argues that under a California Court of Appeal decision – *People

26   v. Beaver*, 186 Cal. App. 4th 107 (2010) – when a defendant in California is charged

27   with theft, the trial court must instruct the jury on *all* possible theories of theft.

28   Petitioner reasons that, because the jury was not instructed on the crime of

embezzlement, the trial court violated his constitutional right to have the charges brought against him decided by the jury and beyond a reasonable doubt.

As a threshold matter, Petitioner misstates California law in general and the *Beaver* decision.  In *Beaver*, the defendant was charged with grand theft and the jury was instructed on the offense of theft by larceny.  The defendant argued that the instruction was improper, because the evidence – when viewed in a light favorable to the prosecution – showed at most theft by false pretenses and the jury was not instructed on that offense.  The California Court of Appeal agreed that, under the specific facts at hand, the crime committed could not have been theft by larceny but, rather, was solely theft by false pretenses, rejecting the State's argument that the crime fit the offense of theft by embezzlement, the theory proffered by the prosecution.  The verdict was reversed, because the jury had been instructed on a theory that did not fit the facts of the case and was not instructed on the elements of the crime committed.  186 Cal. App. 4th at 119-25.  At no point did the California Court of Appeal opine that when a theft offense is charged, the jury must be instructed on "all theories of theft."

In California, various theft offenses (including theft by false pretenses and embezzlement) are consolidated under California Penal Code § 484, and Section 484 theft, in turn, is divided into grand theft and petty theft (*see* California Penal Code §§ 486-88).  While the consolidation of various theft crimes under Section 484 did not abolish the substantive distinctions between the crimes, in the charging instrument, the prosecutor is not required to elect which type of theft he or she will attempt to prove and, instead, can simply allege grand or petty theft.  *See* 2 WITKIN AND EPSTEIN, CALIFORNIA CRIMINAL LAW 4TH ED., §§ 1-3 (2012) (collecting cases).

Consistently with the above, as of the time of trial, Petitioner was charged with multiple counts of grand theft pursuant to California Penal Code § 487(a), among other offenses.  [CT 6090, 6096, 6099, 6103-04 – Counts 11, 28, 36, 37, 47, 48].  With respect to these six grand theft charges, the jury was instructed with

1    CALCRIM No. 1801, regarding degrees of theft.  [CT 6738; RT 5527-28.]  In

2    addition, the jury was instructed with CALCRIM Nos. 1804 and 1805, regarding

3    theft by false pretense and theft by trick.  [CT 6739-41; RT 5528-30.]  Consistently

4    with California law, the jury also was instructed through CALCRIM No. 1861 that it

5    did not need to agree on the form of theft, *i.e.*, that the jury had been instructed on

6    theft by the above two theories and while Petitioner could not be found guilty of

7    theft unless the jurors agreed that the prosecution had proven that Petitioner had

8    committed theft under at least one theory, all of the jurors did not have to agree on

9    the same theory.  [CT 6742; RT 5530-31.]  *See Witkin, supra*, § 2 (collecting cases).

10   The record of requested jury instructions shows that both the prosecution and

11   defendants requested that CALCRIM Nos. 1801, 1804, 1805, and 1861 be given,

12   but that no party requested that CALCRIM No. 1806 (regarding embezzlement) be

13   given  [CT 6772, 6793-99 (instructions requested by Petitioner and rejected by the

14   trial court).]  This is because the prosecution did not proceed on a theory of theft by

15   embezzlement with respect to the six grand theft crimes charged but, rather, argued

16   that the type of theft involved in the grand theft counts was theft by false pretenses.

17   [*See* RT 5630-38.]  Petitioner conceded this in his closing argument, advising the

18   jury that "[t]heft has to be about either false pretense or trick."  [RT 5699.]

19          As noted earlier, Petitioner ultimately was convicted of six counts of grand

20   theft, and the verdicts simply stated "grand theft" without identifying the particular

21   theft theory found.  [CT 6822, 6832, 6837-38, 6840-41.]  Again, the jury is

22   presumed to have followed its instructions.  *Weeks*, 528 U.S. at 234.  Therefore, the

23   jury is presumed to have found that Petitioner was guilty of the grand six theft

24   counts under a theory of either theft by false pretense or theft by trick, more likely

25   the former, because that was the theory explicitly argued by the prosecution.

26   Critically, Petitioner does not argue that the evidence was insufficient to support the

27   jury's verdict of guilt for grand theft based on theft by false pretenses or by trick.

28   Rather, based on a misreading of the *Beavers* decision, Petitioner seems to believe

1   he was entitled to have the jury consider whether the crimes charged through Counts

2   11, 28, 36, 37, 47, and 48 constituted the crime of embezzlement, even though the

3   prosecution was not pursuing any such criminal charge against him and he has not

4   shown that his conduct constituted embezzlement rather than theft by false pretenses

5   (indeed, he does not even make any such argument).

6          Petitioner's CALCRIM No. 1806 argument is wrong on both the facts and the

7   law.  This portion of Ground Fourteen is plainly meritless, and should be denied.

8

9   **XIII.  Ground Fifteen: Section 654 Sentencing Claim**

10         As alleged in the Petition, the fifteenth claim alludes only to unspecified

11  "sentencing issues, violating 14th Amendment concerns" in violation of "due

12  process," and directs the Court to see the Supplemental Brief appended to the CSC

13  Petition at pp. 36-37.  [Petition at 9; Pet. Mem. at 20.]  As raised through the

14  Supplemental Brief, the fifteenth claim asserted that California Penal Code § 654

15  and Rule 4.447 of the California Rules of Court were violated by the trial court's

16  imposition of separate sentencing enhancements under California Penal Code §

17  12022.6(a)(2) and California Penal Code § 186.11(a)(2), which constituted "double

18  punishment."  Petitioner asserted that, to resolve Ground 15, the Court "is being

19  called upon to determine how the *Lai* ruling [*People v. Lai*, 138 Cal. App. 4th 1227

20  (2006)], and Court Rule 4.447 applies [*sic*] to the facts and circumstances in this

21  case."  Petitioner, did not, however, make any reference to "due process" or the

22  Fourteenth Amendment or any federal concern or issue.  [Supplemental Brief at 36-

23  37.][37]

24  _____

25  [37]    In his Traverse, Petitioner cites a Ninth Circuit case and attempts to raise a separate new
     claim that was not included in the Petition, nor was it raised in the CSC Petition or on direct

26  appeal.  [*See* Traverse at 34-35, complaining that the prosecutor relied on a different theory in the
     Information to support the Section 186.11(a) enhancement than that espoused at the sentencing

27  hearing.]  This cursory citation of a Ninth Circuit decision in a Traverse is not only belated, but is
     insufficient to state a viable *exhausted* claim of federal constitutional error.  In addition, as noted

28  earlier, the assertion of an entirely distinct, new and unexhausted claim in the Traverse is

1    As exhausted, Ground Fifteen did not allege that any violation of the United

2    States Constitution or federal law occurred as a result of this claimed Section

3    654/Rule 4.447 sentencing error.  Instead, Petitioner argued only that the trial court

4    committed error in its interpretation and application of state sentencing law in in

5    connection with sentencing him based on both enhancements found by the jury.[38]

6    Indeed, he admitted that what he sought was to have the Court apply a state court

7    decision and state court rule to the facts of his case, not to decide any federal

8    constitutional issue.

9    Petitioner's contention that the state court misinterpreted or misapplied state

10    sentencing law is not cognizable on federal habeas review, because as previously

11    noted, it is a bedrock principle of habeas jurisprudence that "[a] federal court may

12    not issue the writ on the basis of a perceived error of state law."  *Pulley*, 465 U.S. at

13    41; *see also Miller v. Vasquez*, 868 F.2d 116, 118-19 (9th Cir. 1989) (declining to

14    address "a question of state sentencing law" on habeas review, because federal

15    habeas relief is unavailable for alleged error in the interpretation of application of

16    state law).  Petitioner's claim that his sentence violates Section 654 and/or a

17    California Rule of Court is not cognizable on federal habeas review, because it

18    involves solely the interpretation and application of state sentencing law.  *See Watts*

19    *v. Bonneville*, 879 F.2d 685, 687 (9th Cir. 1989) (petitioner's claim that state court

20    violated Section 654 held to be not cognizable); *see also Souch v. Schaivo*, 289 F.3d

21    616, 623 (9th Cir. 2002) (claim that trial court abused its discretion in imposing

22    _____

23    improper.  *See Cacoperdo*, 37 F.3d at 507.  Accordingly, the Court will not address this new and
24    unexhausted claim asserted for the first time in the Traverse.

25    [38]    Petitioner fails to identify the enhancement sentencing that occurred and fails to cite to the
    record for any of his Ground Fifteen assertions.  The Court has combed through the record and
26    determined that the trial court imposed sentences under Section 12022.6(a)(2) for Counts 9, 11,
    26, 27, 47, and 48 (although it stayed the Count 48 enhancement), as well as erroneously imposed
27    such an enhancement for Count 10, which was reversed on direct appeal.  The trial court also
    imposed a five-year term based on the Section 186.11(a)(2) enhancement.  [Supp. CT 139-40; *see*
28    *also* CT 6821, 6823, 6831-32, 6841-43 (jury's true findings on enhancements).]

1  concurrent sentences and/or failed to state adequate reasons for doing so as required

2  by state law held to be not cognizable on federal habeas review); *Cacoperdo*, 37

3  F.3d at 507 (petitioner's claim that the state court erred in imposing consecutive

4  sentences was not cognizable); *Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir.

5  1993) (petitioner's claim that the state court was required to merge his convictions

6  was not cognizable).

7        The claim actually exhausted by Petitioner, therefore, does not warrant

8  federal habeas relief.  Federal habeas relief plainly does not lie for state law

9  sentencing error on its own and is available only when the state court's

10  misapplication of its own sentencing laws was fundamentally unfair and "so

11  arbitrary or capricious as to constitute an independent due process" violation.

12  *Richmond v. Lewis*, 506 U.S. 40, 50 (1992); *Christian v. Rhode*, 41 F.3d 461, 469

13  (9th Cir. 1994).  Petitioner, however, never exhausted any such due process claim.

14  Despite his failure to do so, the Court notes that the Petition alleges – conclusorily

15  and bereft of any factual support – that "the state sentencing procedures are being

16  used arbitrarily, violating federal due process concerns."  [Petition at 11.] Critically,

17  Petitioner's Ground Fifteen argument (as incorporated from the Supplemental Brief)

18  does not make any such claim or support any such finding.  Rather, Petitioner

19  alleges only and without record citation that, at sentencing, he objected to being

20  sentenced for both the California Penal Code § 12022.6 and California Penal Code §

21  186.11(a)(2) enhancements found by the jury, and the trial court agree with the

22  prosecution's argument.  The record shows that the trial court carefully listened to

23  Petitioner's arguments, including regarding the import of the *Lai* decision, as well as

24  those of the prosecutor, and said that it would think about the issue further.  [*See*

25  Supp. RT 67-71.]  Petitioner's allegations do not state any claim for arbitrary or

26  capricious error implicating federal due process concerns no matter how liberally

27  they are construed, and when the record is examined, it is plain that nothing

28  arbitrary or capricious took place.  Rather, the trial court simply did not agree with

95

1  Petitioner's view of what *Lai* meant with respect to the two enhancements in issue,

2  under the facts of the case. This state law error claim is not cognizable; slapping the

3  conclusory label of "due process" on it does not make it so. *Langford*, 110 F.3d at

4  189; *Moore*, 687 F. Supp. 2d at 1040 n.27 ("Even if the unexplained reference to

5  the Fourteenth Amendment is liberally construed to constitute a reference to due

6  process, merely placing such a label on an alleged state law sentencing violation is

7  insufficient to state a cognizable federal constitutional claim."); *see also Rivera v.*

8  *Illinois*, 556 U.S. 148, 158 (2009) ("'A mere error of state law . . . is not a denial of

9  due process.'") (citation omitted).

10       For all these reasons, Ground Fifteen does not warrant federal habeas relief

11  and the claim should be denied.

12

13  **XIV.  Ground Three: Ineffective Assistance Of Appellate Counsel**

14       Finally, the Court returns to Ground Three, Petitioner's claim that his

15  appellate counsel provided ineffective assistance by failing to raise Grounds Four

16  through Fifteen on direct appeal.

17       Earlier, in connection with Ground Two, the Court discussed the *Strickland*

18  test for ineffective assistance of counsel claims. The standards set forth in

19  *Strickland* also govern claims of ineffective assistance of appellate counsel. *See*

20  *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *Smith v. Murray*, 477 U.S. 527,

21  535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). Due process

22  guarantees a criminal defendant the right to effective assistance of counsel on his

23  "first appeal as of right." *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985); *Miller*, 882

24  F.2d at 1431. However, appellate counsel has no constitutional obligation to raise

25  every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745,

26  751 (1983) (appellate counsel "must be allowed to decide what issues are to be

27  pressed"); *Pollard v. White*, 119 F.3d 1430, 1435 (9th Cir. 1997) ("A hallmark of

28  effective appellate counsel is the ability to weed out claims that have no likelihood

of success, instead of throwing in a kitchen sink full of arguments with the hope that some argument will persuade the court."); *see also Moormann v. Ryan*, 628 F.3d 1102, 1109 (9th Cir. 2010) (appellate counsel is not required to raise a meritless issue on appeal).  To properly address a claim of ineffective assistance of appellate counsel, a court must look to the merits of the omitted issue.  *See Moormann*, 628 F.3d at 1107.  "[A]ppellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal."  *Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001); *Moormann*, 628 F.3d at 1107 ("If trial counsel's performance was not objectively unreasonable or did not prejudice Petitioner, then appellate counsel did not act unreasonably in failing to raise a meritless claim of ineffective assistance of counsel, and Petitioner was not prejudiced by appellate counsel's omission.").  To establish prejudice, a petitioner must show that a specific argument on appeal would have resulted in a "reasonable probability of reversal."  *Miller*, 882 F.2d at 1434, n.9.

Unlike Ground Two, Ground Three is governed by the deferential standard of review set forth in Section 2254(d).  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  To succeed on an ineffective assistance of counsel claim governed by Section 2254(d), the petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner."  *Bell v. Cone*, 535 U.S. 685, 699 (2002); *see also Richter*, 562 U.S. at 105 (the "question is not whether counsel's actions were reasonable," but rather, "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard").  "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Mirzayance*, 556 U.S. at 123.

As set forth above, the Court has determined that Grounds Four through

1    Fifteen lack merit.  As a result, Petitioner has not met, and cannot meet, his burden

2    of showing that appellate counsel acted unreasonably in failing to raise these

3    meritless claims or that Petitioner was prejudiced by their omission from his direct

4    appeal.  *See Moormann*, 628 F.3d at 1107; *Wildman*, 261 F.3d at 840; *Strickland*,

5    466 U.S. at 688, 694.  The state court's rejection of Ground Three was not

6    objectively unreasonable, legally or factually.  Ground Three, therefore, does not

7    warrant federal habeas relief.

8

9    **XV.   An Evidentiary Hearing Is Not Warranted.**

10          At the end of his Traverse, Petitioner asserts that he is entitled to receive an

11    evidentiary hearing, relying on a pre-AEDPA decision.  He is mistaken.

12          As discussed earlier, all but one of the Grounds alleged in the Petition is

13    subject to the Section 2254(d) standard of review.  The Court's Section 2254(d)

14    review necessarily was limited to the record that actually was before the state high

15    court when it considered the claims raised through the CSC Petition.  *See*

16    *Pinholster*, 563 U.S. at 180-81; *see also id.* at 185 ("evidence introduced in federal

17    court has no bearing on § 2254(d)(1) review").  Based on that review, the Court has

18    found that Petitioner's claims fail to surmount the deferential standards of Section

19    2254(d).  Petitioner's assertion that an evidentiary hearing is required therefore fails,

20    because unless and until the threshold requirements of Section 2254(d) are found

21    satisfied, an evidentiary hearing is not permitted.  *Id.* at 185 ("If a claim has been

22    adjudicated on the merits by a state court, a federal habeas petitioner must overcome

23    the limitation of § 2254(d)(1) on the record that was before that state court."); *see*

24    *also Gulbrandson v. Ryan*, 738 F.3d 976, 993-94 (9th Cir. 2013) (when a state court

25    has denied claims on their merits, *Pinholster* precludes "further factual development

26    of these claims" through an evidentiary hearing to determine whether Section

27    2254(d) is satisfied); *Stokley v. Ryan*, 659 F.3d 802, 809 (9th Cir. 2011)

28    ("*Pinholster*'s limitation on the consideration of [a petitioner's] new evidence . . . in

federal habeas proceedings also forecloses the possibility of a federal evidentiary hearing"). This limitation applies whether a claim is evaluated under Section 2254(d)(1) or Section 2254(d)(2). *See Pinholster*, 563 U.S. at 189 n.7; *Gulbrandson*, 738 F.3d at 993 n.6.

One claim (Ground Two) was reviewed on a de novo basis. The record was fully adequate to allow the Court to resolve this claim without any factual development, and an evidentiary hearing on this claim not only is unwarranted but likely would be an abuse of discretion given the claim's numerous pleading inadequacies. A petitioner is not entitled to an evidentiary hearing to make up for his failure to plead the requisites of a viable claim.

## RECOMMENDATION

For all of the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) accepting this Report and Recommendation; (2) denying the Petition; and (3) directing that Judgment be entered dismissing this action with prejudice.

DATED: April 27, 2021

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Reports and Recommendations are not appealable to the United States Court of Appeals for the Ninth Circuit, but may be subject to the right of any party to file objections as provided in the Local Civil Rules for the United States District Court for the Central District of California and review by the United States District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until the District Court enters judgment.